Gaspare SCALIA and Mary
Scalia, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 78 Civ. 2775 (LBS).

United States District Court,
S. D. New York.

Aug. 30, 1979.

Bernard Rolnick, New York City, Peter J. Dean, Arthur I. Miltz, New York City, of counsel for plaintiffs.

Robert B. Fiske, Jr., U. S. Atty., S. D. New York, New York City, Peter R. Paden, Asst. U. S. Atty., New York City, for defendant.

### OPINION

SAND, District Judge.

The question posed by the motion before this Court is whether the sole remedy against the United States for injuries sustained by a federal employee allegedly resulting from medical malpractice occurring while he was being treated by the Public Health Service ("PHS") are those under the Federal Employees Compensation Act ("FECA") even though the treatment is claimed to have been mistakenly provided for an illness which, if properly diagnosed, would not have been covered by FECA. We answer this question, upon which there is surprisingly little authority, in the affirmative.

#### Nature of the Proceedings

Gaspare and Mary Scalia, husband and wife, commenced this action under the Federal Tort Claims Act ("Tort Claims Act") on June 16, 1978. The complaint sets forth two causes of action. The first alleges in substance that during a period of treatment beginning April 19, 1977, physicians employed by PHS negligently failed to diagnose and treat a cancerous condition suffered by Gaspare Scalia, a United States Postal employee, and, further, negligently broke his leg; that as a result of this malpractice Gaspare Scalia became "afflicted with an advanced cancerous condition which had it been properly diagnosed would not

have advanced to the present stage which is believed to be terminal" (Complaint par. 20); and, finally, that the defendant's employees failed to advise plaintiff of the nature and extent of his illness, thereby preventing him from receiving proper treatment. The second cause of action states a claim for loss of consortium on behalf of Mary Scalia.

In its answer, the Government asserts as an affirmative defense that this Court lacks jurisdiction over the claim of both plaintiffs on the ground that their exclusive remedy is provided by FECA. As an additional affirmative defense to the claim of Mary Scalia, the answer asserts lack of jurisdiction for failure to file an administrative claim as required by the Tort Claims Act.

On August 28, 1978 Gaspare Scalia died. On September 15, 1978, the Government filed a Suggestion of Death upon the Record pursuant to F.R.Civ.P. 25(a). On February 21, 1978, Mary Scalia moved to substitute herself as representative of Gaspare Scalia's estate for plaintiff Gaspare Scalia.

Mary Scalia also seeks to amend the complaint to add a cause of action for assault and battery against Gaspare Scalia; to extend the time during which Gaspare Scalia's treatment and, by inference, the alleged malpractice occurred; and to specifically plead that the injury or illness for which Gaspare Scalia was treated by PHS did not arise out of his employment by the United States Postal Service. According to the affidavit of plaintiffs' counsel, Mary Scalia also intends to state a claim for wrongful death.

The Government opposes plaintiffs' motion to amend and moves for an order granting summary judgment pursuant to F.R.Civ.P. 56(b) or, alternatively, dismissing the complaint for lack of subject matter jurisdiction.

## FACTS

In support of its motion, the Government has filed an affidavit of Howard G. Wallace, sworn to March 13, 1979 ("Wallace Afft."), a claims examiner in the New York Office of Workers' Compensation Programs ("OWCP"). From this affidavit and the exhibits thereto, the following facts emerge:

In 1972 Gaspare Scalia was employed by the United States Postal Service as a mail equipment handler at a mailbag repair center and depository in New Jersey. On July 17, 1972 he sustained an injury to his lower back while lifting mail sacks. His supervisor referred him for medical treatment to the PHS Outpatient Clinic. His injury was diagnosed as lumbosacral strain and he received periodic treatment for this condition at the Clinic until September 7, 1972. Pursuant to a formal claim for compensation, he was compensated under FECA for the period he was out of work on account of the injury (July 17, 1972 to August 5, 1972).

Scalia experienced a brief recurrence of his back problem in the spring of 1974. He was again treated at the Clinic. Although he was out of work from April 3, 1974 to April 17, 1974, he did not submit a claim for compensation under FECA.

Three years later, Scalia sought treatment again for lower back pain. From the documents submitted, it appears that Scalia's private physician gave Scalia a note stating that he thought the back problem was related to Scalia's initial work injury and recommended that x-rays be taken. On the basis of the doctor's note, Scalia's supervisor at the Postal Service authorized an examination and, if necessary, treatment at PHS on April 19, 1977.

Scalia was seen at the Clinic from time to time subsequent to the referral on April 19, 1977. At some point during the course of this treatment, he was referred to the PHS Hospital on Staten Island for study. While undergoing a straight leg raising test at the hospital on July 11, 1977, he sustained a pathological fracture of the left femur. It was then discovered that he had cancer at the site of the fracture.

From July 11, 1977 to the date of his death, Scalia was hospitalized on several occasions at the PHS Hospital on Staten Island and treated for both the fracture and the cancer. He submitted further claims for FECA compensation during this period.

While the fractured femur was accepted as compensable because it was an injury sustained during the course of authorized treatment for lumbosacral strain, OWCP did not accept the malignancy as compensable because there was no evidence that the cancer was either work-related or aggravated by the authorized treatment. Nevertheless, since the fracture never healed, plaintiff continued to receive FECA compensation until his death.

On or about November 8, 1977 Gaspare Scalia filed an administrative claim as required by the Tort Claims Act, 28 U.S.C. Section 2675(a). The claim seeks $1,000,000 for alleged malpractice of PHS physicians during the period April, 1977 to the date the claim was filed. No response was received within six months and suit was commenced on June 16, 1978. By letter dated July 10, 1978 the Department of Health, Education and Welfare denied Scalia's claim on the grounds that it is barred by the exclusive remedy provision of FECA.

### FECA Coverage

The waiver of sovereign immunity set forth in the Tort Claims Act is not unlimited. One significant limitation is contained in FECA which expressly states that any illness or injury for which compensation is provided by FECA may not be the subject of a suit under the Tort Claims Act.[1] Moreover, "[a]n injured federal employee may not bring an action under the [Tort Claims Act] if there is a substantial question, as to whether his injuries are covered under FECA." *Reep v. United States*, 557 F.2d 204, 207 (9th Cir. 1977).

In determining whether FECA coverage would be present here, we note that such coverage clearly extends to situations in which an initial work-related injury is aggravated by negligence or medical mal-

practice of a physician or other government employee provided treatment or care under FECA. See *Balancio v. United States*, 267 F.2d 135 (2d Cir.), *cert. denied*, 361 U.S. 875, 80 S.Ct. 139, 4 L.Ed.2d 114 (1959); *Mohr v. United States*, 184 F.Supp. 80 (N.D.Cal. 1960); *Frieouf v. United States*, 183 F.Supp. 439 (N.D.Cal.1960); *Leahy v. United States*, 160 F.Supp. 519 (E.D.N.Y.1958).

Plaintiff, however, does not fit clearly within the facts of these cases. The complaint does not assert that the alleged malpractice consisted of aggravating an initial work-related injury, but rather that it was the negligent failure to diagnose a presumably non-work-related cancerous condition. On the other hand, the OWCP records indicate that the alleged malpractice occurred during a course of treatment provided under FECA for what was then thought to be a continuation of plaintiff's work-related lower back pain.

Thus, this case poses the question whether the injuries sustained by a person allegedly injured by medical malpractice committed during a course of treatment provided under FECA are compensable under FECA even though the malpractice is in the nature of a negligent failure to diagnose a non-work-related condition, resulting in an aggravation of that condition.

The Government contends that plaintiff's injuries are covered by FECA. Although the Government admits that the above-cited cases which hold that FECA covers the aggravation by negligence or medical malpractice of an initial work-related injury do not squarely address the issue presented by the instant action, it contends that the reasoning of these cases support its position. Accordingly, the Government points out that Judge Learned Hand found coverage in *Balancio* on the theory that the Compensation Act is a substitute for the whole

---

1. 5 U.S.C. Section 8116(c) reads:

"The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute."

claim and that, at common law, liability for negligence includes all that follows even where there has intervened a succeeding negligent act that produced the aggravation. Although the district courts in *Mohr, Frieouf*, and *Leary* did not adopt the analysis of Judge Hand, the Government contends that their reasoning also applies here. In those cases, the district courts found coverage under FECA because "The submission to medical treatment under the Government's medical care program may reasonably be considered to be one of the duties incident to Federal employment." *Mohr v. United States*, supra, 184 F.Supp. at 81.

In support of its position, the Government also cites the unreported decision in the case of *John B. Battey* ECAB Doc. No. 73–124, dated October 10, 1974. In *Battey*, the OWCP Special Examiner found the claimant eligible for FECA compensation for a tubercular condition that predated his Government employment, where the claimant alleged that Government personnel negligently failed to discover evidence of the tuberculosis in his pre-employment chest x-rays and that the condition was exacerbated by the failure to treat it at an early stage. The Chief of the Claim Branch concurred in the result, stating that "[a]n employer should be liable for the deleterious effects of medical services furnished to employees." *Battey* at 3.

Finally, the Government cites the OWCP program memoranda in support of its contention that if plaintiff had sought FECA compensation on the theory stated in the complaint and established the alleged malpractice and resulting injury to the satisfaction of OWCP, FECA benefits would have been available.[2]

Plaintiffs' response to these contentions is that the Government is seeking the right unilaterally to determine whether an action is compensable, subject to FECA, or subject to the Tort Claims Act. Plaintiffs urge that Gaspare Scalia's cancer was not in fact work-related and that the Government's erroneous initial belief that his malady was work-related should not estop plaintiffs from seeking a remedy which they believe will be more generous to them.

The difficulty with plaintiffs' position is that it is based entirely on hindsight and unrealistically casts the Government in a Machiavellian role to deprive the plaintiffs of their just desserts. The critical point of inquiry should be, we believe, not the state of facts as they ultimately develop, but what considerations obtain at the time the federal employee seeks treatment at a Government facility. Present practice, the Government advises us, is to admit an employee for treatment if his illness is or may be work-related. Obviously, this question cannot always be definitely determined prior to diagnosis or treatment. We believe that in the long run the rule which will inure to the benefit of most employees in most instances is one which will encourage and facilitate their receipt of employer-provided treatment as early and with as few restraints as possible. If the consequence of an erroneous determination as to whether an illness is or is not work-related would be to subject the Government to possible Tort Claims Act liability, one might well anticipate that more restrictive admitting practices might be adopted by the Public Health Service.

In any event, it seems clear that no Public Health agency will render treatment for the purpose of estopping a Federal tort claim.

Moreover, the cases cited by the plaintiffs do not mandate a different result. In *United States v. Reid*, 251 F.2d 691 (5th Cir. 1958), the district court, on facts similar to *Battey*, believed FECA coverage did not exist and that the statute of limitations barred a claim under the Tort Claims Act. The Fifth Circuit reversed the determination that the statute of limitations was a bar to a Tort Claims Act claim and remanded for a trial on the merits. 224 F.2d 102 (1955). After a trial, the district court upheld plaintiff's claim under the Tort Claims Act. On appeal, the Fifth Circuit affirmed

---

**2.** OWCP Program Memoranda 42 and 186, Exhibits L and M to the Wallace Afft.

the verdict but did not address the issue whether the Compensation Act is the exclusive remedy. It was on this basis that Judge Learned Hand distinguished *Reid* in *Balancio v. United States, supra* : "In *Reid* . . . the court thought the plaintiff had been refused compensation because he had not originally been injured in the course of his employment; and on the second appeal . . . this ruling was not disturbed; at any rate the point was not taken that compensation was the exclusive remedy." 267 F.2d at 137. Additionally, the Government contends that *Reid*, decided twenty-five years ago, does not reflect the "broadened" concept of FECA coverage exemplified by *Battey*.

Plaintiffs also cite *Bailey v. United States*, 451 F.2d 963 (5th Cir. 1971) and *Martin v. United States*, 566 F.2d 895 (4th Cir. 1977). In these cases, the courts held that injuries to federal employees did not occur in the scope of their employment, thus permitting a Tort Claims Act action to lie. We believe these cases which deal with injuries incurred in transit to and from work are not illuminating with respect to the issue before this court. There is no question here that Gaspare Scalia was undergoing treatment in a Public Health Service Hospital administered by a Government employee when the alleged malpractice occurred.

Because we conclude that the critical question is whether the alleged malpractice occurred during FECA treatment and not whether the underlying illness as ultimately established was or was not work-related, we find the plaintiffs' exclusive remedy is FECA. Accordingly, the complaint should be dismissed, which dismissal is without prejudice to enable plaintiffs to pursue FECA remedies. See *Concordia v. United States Postal Service*, 581 F.2d 439, *reh. denied*, 585 F.2d 731 (5th Cir. 1978); *Bailey v. United States*, 451 F.2d 963 (5th Cir. 1971); *Daniels-Lumley v. United States*,

113 U.S.App.D.C. 162, 306 F.2d 769 (D.C.Cir. 1962); *Somma v. United States*, 283 F.2d 149 (3rd Cir. 1960).

We recognize from the papers submitted that it might appear that OWCP has already made a finding that plaintiffs are not entitled to compensation. Thus, Wallace in his affidavit avers:

"While the fractured femur was accepted as compensable, the malignancy itself was not. Scalia never claimed compensation on the grounds that the malignancy was work-related or that it was caused or aggravated in any way by the course of treatment at PHS. Similarly, we have been presented with no evidence that would support such a conclusion." (Wallace Afft. par. 11).

We assume, however, that these findings are not conclusive and that on remand OWCP will consider the question *de novo* in the light of all the evidence now available which may be presented to it.

If, for reasons which are inconsistent with the contentions which the Government has advanced here and which the Court has accepted, plaintiffs' claim in its entirety is determined to be not compensable as a matter of law, the complaint may be reinstated. If OWCP entertains the claim but determines the facts adversely to plaintiffs, its determination is conclusive and no appeal or reinstatement of the action is allowed. 5 U.S.C. Section 8128(b); see *Concordia v. United States Postal Service, supra*, 581 F.2d at 443.

### *Filing of an Administrative Claim*

The Government argues that the claim which Mary Scalia asserts in her own behalf under the Tort Claims Act must also be dismissed because of her failure to satisfy the jurisdictional prerequisite that an administrative claim be filed pursuant to 28 U.S.C. Section 2675(a).[3]

The only administrative claim filed in this action relates to the injury to Gaspare Sca-

---

**3.** We realize that the Second Circuit has not ruled on this issue. Other circuits, however, have held that compliance with Section 2675(a) is a jurisdictional requirement which may not be waived. See *House v. Mine Safety Appli-*

*ances Co.*, 575 F.2d 609, 614 (9th Cir. 1978); *Lunsford v. United States*, 570 F.2d 221 (8th Cir. 1977); *Molinar v. United States*, 515 F.2d 246, 249 (5th Cir. 1975); *Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508 (6th

lia alleged in the first cause of action. The independent claim of Mary Scalia therefore has not been the subject of an administrative claim and must also be dismissed.[4]

### Amendment of the Complaint

Plaintiffs' request to substitute Gaspare Scalia's legal representative as plaintiff and to amend the complaints is denied. It does not appear that the proposed amendments to the complaint will, in any way, overcome the flaws in plaintiffs' action discussed above.

Leave to amend the first cause of action, however, will be granted if, as outlined above,[5] the Government determines that plaintiffs' claim in its entirety is not compensable as a matter of law. At that time, Gaspare Scalia's legal representative may be substituted as plaintiff.

### Conclusion

Accordingly, plaintiffs' complaint is dismissed for lack of subject matter jurisdiction.[6] The dismissal of the first cause of action is without prejudice to reinstatement if plaintiffs' claim is determined to be not compensable as a matter of law.

So ordered.

Cir. 1974); *Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir. 1972); *Bialowas v. United States*, 443 F.2d 1047 (3d Cir. 1971).

4. A claim was filed on behalf of Mary Scalia dated March 13, 1979 and filed on April 17, 1979. Plaintiffs' 9(g) statement, Section 2. This claim, however, is not properly before this Court because, pursuant to 28 U.S.C. Section 2675(a), the Public Health Service has six months to make an administrative determination of the claim and suit may be commenced only after the determination is made or the six month period has elapsed. See *Caton v. United States*, 495 F.2d 635, 638 (9th Cir. 1974).

Nor is there merit in plaintiffs' further contention that the Notice of Motion and Proposed Amended Complaint filed in this action "acted as a notice of claim." Plaintiffs' Memorandum in Opposition, p. 11. Section 2675(a) requires that the claim be filed with the "appropriate Federal Agency," here the Public Health Service. Plaintiffs' contention that a litigation pleading satisfies the statute would in effect nullify the jurisdictional prerequisite to a Tort Claims Act suit.

5. See page 1044, *supra.*

6. Although we have outlined the essentially undisputed facts set forth in the Wallace affidavit in this opinion, we hold as a matter of law that FECA is the sole remedy against the United States for injuries sustained by a Federal employee allegedly resulting from medical malpractice occurring while he was being treated by PHS even though the treatment is claimed to have been mistakenly provided for an illness which, if properly diagnosed, would not have been covered by FECA.