Dorcas J. DANIELS–LUMLEY, Appellant,

v.

UNITED STATES of America et al., Appellees.

No. 16597.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 21, 1962.

Decided June 7, 1962.

Mr. Charles N. Ford, Washington, D. C., for appellant.

Mr. William Leavenworth Colby, Atty., Dept. of Justice, with whom Asst. Atty. Gen. William H. Orrick, Jr., and Mr. David C. Acheson, U. S. Atty., were on the brief, for appellee United States of America. Mr. Morton Hollander, Atty., Dept. of Justice, also entered an appearance for appellee United States of America.

Mr. John R. Hess, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Prin. Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp.

Counsel, were on the brief, for appellee District of Columbia.

Before PHILLIPS, Senior United States Circuit Judge for the Tenth Circuit,* and WASHINGTON and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

This appeal raises questions as to the liability of the United States and the District of Columbia for damages for the injuries sustained by the appellant, an employee of the United States, as a result of a fall on a sidewalk in the District.

On December 5, 1957, the plaintiff-appellant was employed in the South Building of the United States Department of Agriculture in the District of Columbia. During her normal working hours on that day, she left the building to mail a personal letter in the public mailbox located on the sidewalk a few feet from the northwest entrance of that building. She fell after she had stepped from the steps of the building onto the sidewalk, which she alleges was in a hazardous condition due to an accumulation of snow and ice. She sued both the United States and the District, assert-ing that either or both were negligent in permitting this condition to exist, and that either or both are liable to her for the injuries sustained in her fall. The District Court dismissed the suit against the United States, and entered judgment in favor of the District of Columbia. This appeal followed.

*Dismissal as Against the United States.*

Under the Federal Employees' Compensation Act, 5 U.S.C.A. § 751 et seq., the United States must pay specified compensation for a disability resulting from personal injuries sustained by an employee "while in the performance of his duty," and the liability of the United States under the Act is "exclusive, and in place, of all other liability of the United States" to the employee. 5 U.S.C.A. §§ 751(a) and 757(b).[1] The District Court here made no finding as to whether plaintiff's fall occurred while she was in the performance of her duties within the meaning of the Act, nor would it have been appropriate for it to do so. Decision of that question and all questions under the Act is committed by the Act to the Secretary of Labor, and his decision is not subject to review by any court. 5 U.S.C.A. §§ 783, 786 and 793.[2]

---

* Sitting by designation pursuant to Sec. 294(d), Title 28, U.S.Code.

[1]. These sections read:

"§ 751. *Disability or death of employee; willful misconduct; war-risk hazards.*

"(a) The United States shall pay compensation as hereinafter specified for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty * * *."

"§ 757. *Persons receiving compensation not to be paid for other services; pensions; election; right to compensation as exclusive; exception.*

     *     *     *     *     *

"(b) The liability of the United States or any of its instrumentalities under sections 751–756, 757–781, 783–791, and 793 of this title or any extension thereof with respect to the injury or death of an employee shall be exclusive, and in place. of all other liability of the United States * * * on account of such injury or death * * *."

[2]. These sections provide:

"§ 783. *Rules and regulations*

"The Secretary is authorized to make necessary rules and regulations for the enforcement of sections 751–756, 757–781, 783–791, and 793 of this title, and shall decide all questions arising under said sections."

"§ 786. *Findings and award by Secretary; payment of compensation.*

"The Secretary, upon consideration of the claim presented by the beneficiary, and the report furnished by the immediate superior and the completion of such investigation as he may deem necessary, shall determine and make a finding of facts thereon and make an award for or against payment of the compensation provided for in sections 751–756, 757–781, 783–791 and 793 of this title. * * *"

"§ 793. *Transfer of administration to other bodies; regulations as to payment; employees of Canal Zone Government, Panama Canal Company, and Alaska Railroad; appeals; application to noncitizen and nonresident employees.*

The Federal Employees' Compensation Act seeks to provide for public employees a well-defined system of compensation as a replacement for the expense and hazards of a tort suit. The Act expresses "a general statement of a congressional policy favoring a remedy through compensation rather than by action in tort for Federal employees." Lewis v. United States, 89 U.S.App.D.C. 21, 22, 190 F.2d 22, 23, cert. denied, 342 U.S. 869, 72 S.Ct. 110, 96 L.Ed. 653 (1951). Accordingly, unless plaintiff's injuries were clearly not compensable under the F. E. C. A. (and this is not such a case),[3] we believe that the Secretary of Labor must be given the primary opportunity to rule on the applicability of the Act to this case.[4]

Plaintiff has, however, declined throughout to secure a decision from the Secretary although given every opportunity to do so. After hearing evidence and argument on the matter, the District Court stayed the proceedings before it, allowing plaintiff ten days in which to file her claim for compensation under that Act with the Bureau of Employees' Compensation, U. S. Department of Labor,[5] and allowing her the additional time needed to secure a determination as to whether her injuries were compensable thereunder.[6] Upon plaintiff's

"* * * The action of the Secretary or his designees in allowing or denying any payment under sections 751–756, 757–781, 783–791 and 793 of this title shall be final and conclusive for all purposes and with respect to all questions of law and fact, and not subject to review by any other official of the United States, or by any court or [sic] mandamus or otherwise * * *."

3. In Matter of Gunderson, a decision of the Employees' Compensation Appeals Board, reported at 7 E.C.A.B. 288 (1954), rehearing denied, id. at 707 (1955), a Federal employee fell on a sidewalk while away from her place of employment on a trip to procure coffee. The Board concluded that the employee's injuries were sustained while in the performance of her duties, pointing out that she was paid for the time during which she was off the employer's premises, that there were no facilities for securing coffee on the premises, and that leaving the premises for coffee was in accord with past practice and with the knowledge and consent of the employer. There is evidence in the present case tending to show that similar factors are present here. Thus, plaintiff may be able to present proof in an attempt to bring her case within the Gunderson case, which seems in accord with the recent line of authority in the field of workmen's compensation. See, e. g., 1 Larson, The Law of Workmen's Compensation §§ 20.00–21.53, 21.80–21.84 (1952), and cases cited 1961 Cum.Supp. In any event, there is a serious question as to whether plaintiff is outside the scope of the Federal Employees' Compensation Act, and a decision by the Secretary of Labor that her injuries were not covered by that Act is a condition precedent to the continued prosecution of this suit.

4. See Lewis v. United States, supra; Somma v. United States, 283 F.2d 149 (3d Cir. 1960); Blanc v. United States, 244 F.2d 708 (2d Cir.), cert. denied, 355 U.S. 874, 78 S.Ct. 126, 2 L.Ed.2d 79 (1957). See also Sasse v. United States, 201 F.2d 871 (7th Cir. 1953); Underwood v. United States, 207 F.2d 862 (10th Cir.1953); Posegate v. United States, 288 F.2d 11 (9th Cir.), cert. denied, 368 U.S. 832, 82 S.Ct. 55, 7 L.Ed.2d 34 (1961).

5. A Bureau of Employees' Compensation and an Employees' Compensation Appeals Board had been established under the Act by Order 58 of the Federal Security Agency of July 16, 1946, 11 Fed. Reg. 7943. The Bureau and Appeals Board, together with their functions, were transferred by Reorganization Plan No. 19 of May 24, 1950, 15 Fed.Reg. 3178, to the Department of Labor, to be administered under the direction and supervision of the Secretary of Labor.

6. Although there is no proof before us, plaintiff's brief indicates that her superior officer filed on her behalf with the Bureau of Employees' Compensation, Department of Labor, an A-1 form for compensation which had been signed by her on the day following her injury. The brief of the United States indicates that, sometime later, she was advised that "Your case has been approved as coming within the purview of the Federal Employees' Compensation Act" and that "she was invited to file claim for benefits." Her brief states that after returning from the hospital and after consultation with counsel, she advised the Bureau to take no further action and that she "refused to file a claim for compensation."

failure to file her claim within the ten day period, the District Court dismissed her suit as against the United States but without prejudice to the right of the plaintiff to pursue her remedies within the Bureau of Employees' Compensation, Department of Labor. In this court, plaintiff's counsel has stated that she will not present her claim administratively.

Accordingly, we will affirm the dismissal by the District Court of her suit against the United States, without prejudice to such further proceedings as she may be advised to pursue under the Employees' Compensation Act.

*Judgment in Favor of the District of Columbia.*

At the trial the following facts emerged. Through condemnation of private property in 1929 the United States acquired a tract of land, including the land on which the sidewalk where plaintiff fell is now situated. It built the South Agriculture Building on this land and has always occupied the building. In 1936 at the request of the United States the District constructed the subject sidewalk and curbing abutting this building, and received payment from the United States for the cost of the construction. On one occasion in 1956 the United States requested the District to repair the curbing and sidewalk, and apparently the District did so without reimbursement from the United States. The sidewalk is not owned by, and is not under the control of, the District of Columbia, and jurisdiction over it was not shown to have been transferred from the United States to the District under the statute authorizing such transfer. D.C.Code § 8–115 (1961). The United States maintained a crew at the South Agriculture Building to remove snow and ice from the sidewalk areas around the building and this crew was available for work on the day when plaintiff fell. On this evidence, the District Court concluded as a matter of law that the District owed no duty to the plaintiff to repair or maintain the sidewalk, and that it is not liable for failure to clear the sidewalk of snow and ice.

Plaintiff contends that under Section 7–101 of the D.C.Code (1961), the District had the duty to maintain all public sidewalks in reasonably safe condition for pedestrian use, whereas the District contends that the sidewalk involved here is exempted from its jurisdiction by Section 7–102 of the Code.[7] We find it unnecessary to decide this question, since there are other statutory provisions, less general than Sections 7–101 and 7–102, which deal specifically with the responsibility for snow removal from sidewalks in the District. We think that these provisions control in the situation before us.

In Sections 7–802 and 7–803 of the D.C.Code (1961), enacted first in 1922, Congress undertook to determine the responsibility, as between the District and the United States, for removal or treatment of snow and ice on sidewalks adjacent to public buildings. Section 7–802 places upon the District the duty

---

7. These sections are derived from statutes first enacted in 1871 and 1864, respectively, as the opinion of the District Court in this case points out. Section 7–101 in terms gives the Commissioners of the District "entire control" of the streets and avenues of the city, with power to make all regulations deemed necessary for keeping them in repair, and Section 7–102 gives them the care and charge of, and exclusive jurisdiction over, all public roads and bridges, "except such as belong to and are under the care of the United States, and except such as may be otherwise specially provided for by Congress." Plaintiff's position is that the sidewalk in question was on a "street of the city," rather than a "public road" within the meaning of these sections, and thus that the Commissioners had entire control over its repair and maintenance. See Leary v. District of Columbia, D.C., 166 F.Supp. 542 (1958), taking the view that a sidewalk, built by the District at the order of the United States on United States-owned land and paid for by the United States, may come under Section 7–102 as a "public road" belonging to and under the care of the United States. Cf. Barnes v. District of Columbia, 91 U.S. (1 Otto) 540, 23 L.Ed. 440 (1875), involving the predecessor statute from which Section 7–101 was derived.

of removing or treating snow and ice on sidewalks in front of or adjacent to all public buildings owned or leased by the District. Under Section 7–803 the Director of the National Park Service has the duty to remove or treat snow and ice on sidewalks in front of or adjacent to buildings owned by the United States, and from sidewalks to open spaces owned by the United States.[8]

We think these sections evidence a clear intention on the part of Congress to place the primary duty of clearing and maintaining the sidewalk here in question, under the facts shown, upon the United States. The legislative history supports this understanding of the congressional intention. See S.Rep.No. 461, 67th Cong., 2d Sess. (1922); H.R. Rep.No.664, 67th Cong., 2d Sess. (1922).[9]

8. Sections 7–802 and 7–803 read as follows:
"§ 7–802. *Removal by Commissioners from walks adjacent to public buildings—Making safe with sand or ashes.*

"It shall be the duty of the Commissioners of the District of Columbia within the first eight hours of daylight after the ceasing to fall of any snow or sleet, or after the accumulation of ice on the paved sidewalks within the fire limits of the District of Columbia, in front of or adjacent to all public buildings, public squares, reservations, and open spaces in the said District owned or held by lease by said District, to cause such snow, sleet, and ice to be removed; and also to cause the same to be removed from all crosswalks of improved streets and places of intersection of alleys with paved sidewalks, and also from all paved sidewalks or crosswalks used as public thoroughfares through all public squares, reservations, or open spaces within the fire limits of said District owned or held by lease by the District of Columbia; but in the event of inability to remove such accumulation of snow, sleet, and ice without injury to the sidewalk, by reason of the hardening thereof, it shall be their duty, within the first eight hours of daylight after the hardening thereof, to make reasonably safe for travel, or cause to be made reasonably safe for travel, by the sprinkling of sand or ashes thereon, such paved sidewalks, crosswalks, and places of intersection of alleys with paved sidewalks, and shall, as soon thereafter as the weather shall permit, thoroughly clean, or cause to be thoroughly cleaned, said sidewalks, crosswalks, and places of intersection of alleys with paved sidewalks."

"§ 7–803. *Removal from sidewalks adjacent to Federal buildings—Making safe with sand or ashes.*

"It shall be the duty of the Director of National Park Service within the first eight hours of daylight after the ceasing to fall of any snow or sleet, or after the accumulation of ice upon the paved sidewalks within the fire limits of the District of Columbia, to remove or cause to be removed from such sidewalks as are in front of or adjacent to all buildings owned or leased by the United States, except the Capitol buildings and grounds and the Congressional Library building, and from all paved sidewalks or crosswalks used as public thoroughfares in front of, around, or through all public squares, reservations, or open spaces within the fire limits of the District of Columbia, owned or leased by the United States, such snow, sleet, and ice; but in the event of inability to remove such accumulation of snow, sleet, and ice, by reason of the hardening thereof, without injury to the sidewalk, it shall be his duty, within the first eight hours of daylight after the hardening of such snow, sleet, and ice, to make reasonably safe for travel, or cause to be made reasonably safe for travel, by the sprinkling of sand or ashes thereon, such paved sidewalks and crosswalks, and shall, as soon thereafter as the weather shall permit, thoroughly clean said sidewalks and crosswalks."

See also Section 7–1207 of the Code imposing upon the Director of the National Park Service the duty to remove obstructions from streets in the District which have been in whole or in part improved by the United States.

9. Indeed the United States in effect acknowledges that it had the sole duty, stating in its brief that the sidewalk was "indisputably" part of the premises of the United States, and that "if, contrary to the findings and decision below, the District had failed of any duty to clear the sidewalk, it would have done so only as an instrumentality of the United States and would have been immune under 5 U.S.C. 757 [the Employees' Compensation Act]." Our holding that plaintiff's exclusive remedy against the United States is to proceed under the Federal Employees' Compensation Act, 5 U.S.C.A. § 757(b), removes the necessity for a ruling as to whether the United States would be liable to the plaintiff for negli-

Whether in some special circumstances the District might be subject to a common law obligation regarding the removal of snow and ice from sidewalks such as this one is a question not now before us.[10] Consequently, the District, having no statutory or other responsibility with respect to the sidewalk in question, cannot be said to have negligently failed to perform such a duty.

Although we said in District of Columbia v. Campbell, 103 U.S.App.D.C. 20, 254 F.2d 357 (1958), that Section 7–803 does not shift the responsibility from the District of Columbia for removal of snow from sidewalks adjacent to Federal property in such sense as to bar a suit against the District for personal injuries, the statement must be considered in the factual context of that case. There the Federal land in question was in part occupied by a building, apparently built by the District, which housed the Municipal Court of the District of Columbia. The evidence showed that the District maintained in the building a custodial force expressly charged with the duty of removing snow and ice from the sidewalks around the building [11] and that the United States also had a force which was sanding the sidewalks around the building at the time Mrs. Campbell fell.[12] Thus, the Campbell case was one in which the District controlled, if it did not own, the building adjacent to (although not abutting) the sidewalk there in question, and the District in practice recognized a duty to remove snow and ice by maintaining a custodial force for that purpose. In the circumstances we regarded it as having such a duty under Section 7–802 and as not being exonerated from liability under that section by reason of the fact that the United States might have also been liable if it had been sued. The facts in the present case offer no basis for finding a similar dual duty with respect to the sidewalk.[13]

The decision of the District Court is accordingly

Affirmed.

gence, if proved, in failing to perform the duty imposed on it by Section 7–803. Compare Gilroy v. United States, D.C., 112 F.Supp. 664 (1953), holding the United States liable for negligence in failing to keep a sidewalk on Constitution Avenue in the city of Washington in reasonably safe condition where that street was under the control of the United States through the National Park Service. Cf. also Leary v. District of Columbia, supra note 7. We of course have recently indicated our view that liability to the person injured will ordinarily follow a negligent breach of a statutory duty, even though the statute may not in terms spell out such liability. See Whetzel v. Jess Fisher Management Co., 108 U.S. App.D.C. 385, 282 F.2d 943 (1960). Cf. Radinsky v. Ellis, 83 U.S.App.D.C. 172, 167 F.2d 745 (1948), a suit against a private property owner, where plaintiff relied on the snow removal statutes.

10. The existence of a District custodial force for snow removal in a particular area, the prior practice of the District in undertaking such snow and ice treatment of a particular sidewalk, repeated unremoved accumulations (or other forms of "notice" to the District), are all fac-

tors which might be pertinent to the question of the existence of a common law duty on the part of the District. However, no such showing was made in this case. Cf. District of Columbia v. Campbell, infra.

11. Cf. our earlier opinion at 100 U.S.App. D.C. 120, 243 F.2d 226 (1957).

12. The United States was not named as a defendant and no question as to its liability under Section 7–803, or otherwise, was involved. The District made no contention that Section 7–803 exonerated it from a duty to remove snow and ice until it moved for a directed verdict after the evidence had been introduced in the second trial on remand.

13. We add that neither Radinsky v. Ellis, 83 U.S.App.D.C. 172, 167 F.2d 745 (1948), nor Smith v. District of Columbia, 89 U.S.App.D.C. 7, 189 F.2d 671 (1951), was concerned with a sidewalk adjacent to a public building or with allocating the duty of snow removal on sidewalks around public buildings as between the District and the United States under Sections 7–802 and 7–803. Neither decision is controlling here.