**Pat O. HARRINGTON, Appellant,**

v.

**Jeanette MOSS, Appellee.**

**No. 12918.**

District of Columbia Court of Appeals.

Argued Jan. 24, 1979.

Decided Oct. 17, 1979.

William D. Appler, Washington, D. C., for appellant.

Patrick J. Christmas, Washington, D. C., for appellee.

Before KERN, NEBEKER, and FERREN, Associate Judges.

FERREN, Associate Judge:

Appellant, Pat O. Harrington, contests the judgment of the trial court based on a jury verdict awarding appellee, Jeanette Moss, and her children $26,778 for the wrongful death of her husband Doward Moss. Harrington asserts that the facts present a "substantial question" as to whether Ms. Moss' claim is covered by the Workmen's Compensation Act (the Act), D.C.Code 1973, § 36–501, which incorporates the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.* (1976). Accordingly, he maintains that the Benefits Review Board rather than the Superior Court has primary jurisdiction. We agree with appellant and therefore remand the case to the trial court with instructions to permit the Board to determine, in the first instance, whether the Act covers Ms. Moss' claim.

I.

In January 1975, appellant Harrington was the owner and part-time manager of the Oxford Tavern, located at 3000 Connecticut Avenue, N.W. He employed Doward Moss, who shared in the tasks of bartending and managing the tavern. On January 10, 1975, Moss arrived for work at 7:30 p. m. to relieve Harrington, who had worked the day shift. Shortly after Harrington left, Moss informed the cook, Eugene Alexander, that he had to leave for a few hours. Moss asked Alexander to stay to help the waitress, Elsa Mason, until he returned. Alexander agreed; Moss left.

Later that evening, Harrington met a friend who told him that Moss was not at the Oxford Tavern but at a bar in another part of the city. On learning this, Harrington returned to the tavern, arriving between 1:30 and 2:00 a. m., and, according to his testimony, took over "the manager's position and began checking out the night receipts." Between 3:00 and 3:30 a. m., shortly after the tavern closed, Moss returned, intoxicated. Ms. Mason complained about his leaving her to tend bar alone. Moss responded by telling her to get out "and don't plan to come back." He then requested Harrington to "make up her check." Assuming that Moss had fired her, Mason left.

Shortly thereafter, Harrington asked Moss where he had been all evening "when he was supposed to be working." Harrington complained that he had been forced to

return to work because Moss had left the job. According to Harrington, Moss replied, "It's none of your damn business where I been at. You or nobody else is going to tell me what to do now." Moss came behind the bar where Harrington was checking the cash register and knocked him to the floor. Moss then pushed the heavy cash register off the bar toward Harrington, narrowly missing him as he lay on the floor.

According to Harrington's testimony, while Moss and Alexander retrieved the money which had spilled from the register, Harrington grabbed a gun stored in a cabinet of the bar, put it in his pocket, and left the tavern to go to his car. Moss followed. Although Harrington warned Moss that he had a gun, Moss ran toward him. Harrington fired several shots, then turned to flee. Moss died shortly thereafter from bullet wounds.

Without filing a claim under the Act, Jeanette Moss brought a civil action for wrongful death against both Harrington and the Crabtree Cafe, Inc., t/a Oxford Tavern.[1] Crabtree Cafe moved for summary judgment, asserting that the Act provided the exclusive remedy. Ms. Moss opposed this motion, stating that her husband had not worked since 7:30 p. m. on January 10 and had only returned to the tavern for a drink, not in connection with his work. Thus, she says, his death could not have arisen out of the course of his employment, as required by the Act.

The court denied Crabtree's motion, concluding that there were factual issues as to whether Harrington was acting within the scope of his employment, and whether Moss' death resulted solely from his intent to injure Harrington—and thus whether Ms. Moss had a claim under the Act. After a trial, the jury awarded Ms. Moss and her children $26,778 against Harrington while finding no liability against the corporation.

Harrington moved for a judgment n. o. v., arguing that the Act provided Ms. Moss' exclusive remedy for damages. The court denied this motion, concluding that because the jury found "that decedent's death proximately resulted either wholly or in part from the fact that he was intoxicated and from his own wilful intent to injure himself or another," Ms. Moss' claim could not be brought under the Act. The court added that "[w]hile it may have been that plaintiff should have first attempted to exhaust her administrative remedy, if any, under the Act, the facts of this case *suggest* that that remedy was not available" (emphasis added). Harrington then noted this appeal.

## II.

The Workmen's Compensation Act is a comprehensive legislative scheme requiring employers to provide compensation for employees who are disabled or killed in the course of employment. *See* D.C.Code 1973, § 36–501; 33 U.S.C. § 903 (1976); *cf. O'Rourke v. Long*, 41 N.Y.2d 219, 222, 391 N.Y.S.2d 553, 556, 359 N.E.2d 1347, 1350 (1976) (New York Workmen's Compensation Act).[2] Every employer in the District of Columbia is subject to the Act, D.C.Code 1973, § 36–501, and, irrespective of fault, "shall secure the payment to his employees of the compensation payable." 33 U.S.C. § 904 (1976). The Act thus provides employees with a practical and expeditious remedy for work-related accidents or injuries. At the same time, it limits the economic burden on employers by providing that their liability under the Act shall be "exclusive." 33 U.S.C. § 905(a) (1976). *See Cardillo v. Liberty Mutual Insurance Co.*, 330 U.S. 469, 476, 67 S.Ct. 801, 91 L.Ed. 1028 (1947). The Act thereby deprives employees and their representatives of the right to pursue common law tort suits, such as wrongful death actions, against their employers or co-workers if the injuries are

1. Harrington was the President and sole stockholder of the corporation.

2. Cases arising under the New York's Workmen's Compensation Act should be noted in construing the Longshoremen's and Harbor Workers' Compensation Act, because the New York statute provided the model for the federal statute. *See Garcia v. DeLeon*, D.C.Mun.App., 59 A.2d 637, 639 (1948).

covered by the Act. *See Ciarrocchi v. James Kane Co.*, 116 F.Supp. 848, 851 (D.D. C.1953). In summary, if the injury is within the Act's coverage, an employee (or representative) may only pursue a claim before the Benefits Review Board, not in Superior Court. *See O'Rourke, supra* at 41 N.Y.2d 221, 391 N.Y.S.2d at 556, 359 N.E.2d at 1350.

There are two possible ways in which Ms. Moss claim could fall outside the Act's coverage. First, it may fail to satisfy the definition of "injury" in the Act, *i. e.*, an injury "arising out of and in the course of employment." 33 U.S.C. § 902(2) (1976). Second, it may involve an injury "occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another"—an injury for which the Act denies compensation. 33 U.S.C. § 903(b) (1976).[3] In its ruling on Crabtree Cafe's motion for summary judgment, the trial court apparently concluded that Ms. Moss' claim probably was not covered by the Act because there were unresolved factual questions as to whether Harrington was acting within the scope of his employment when he shot Moss, and whether Moss was killed while attempting to injure or kill Harrington. Again, in denying Harrington's motion for judgment n. o. v., the court concluded that a remedy under the Act was not available because the jury found that Moss' death had resulted "either wholly or in part" from his intoxication and wilful intent to injure Harrington. We conclude that the trial court erred in these rulings, as it was not for a Superior Court judge and jury to make these factual judgments in the first instance.

Given the doctrine of primary jurisdiction, courts must defer to administrative agencies for the initial resolution of issues that Congress has placed within the special competence of the agency or that otherwise require the expertise of administrative discretion. *See Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 96 L.Ed. 576 (1952); *see generally* 3 K. Davis, Administrative Law Treatise § 19.01 (1958).[4] In this way, courts can assure uniform application of a statute and deter those who would flout the administrative process (and thus weaken the agency's effectiveness) by encouraging people to ignore its procedures. *See Tredway v. District of Columbia*, D.C.App., 403 A.2d 732, 735–36 (1979); *Reep v. United States*, 557 F.2d 204, 207 (9th Cir. 1977). Accordingly, courts generally have held that when there is a substantial question as to whether an employee's injuries are covered by an employment compensation statute, the employee must first pursue a remedy under the statute, thereby permitting the agency to make the initial decision concerning coverage. *See Tredway, supra* at 735–36; *Reep, supra* at 207; *Bailey v. United States*, 451 F.2d 963, 965 (5th Cir. 1971); *Somma v. United States*, 283 F.2d 149, 151 (3d Cir. 1960); *cf. O'Rourke v. Long, supra*, 41 N.Y.2d at 228, 359 N.E.2d at 1354, 391 N.Y. S.2d at 560 (where the availability of workmen's compensation turns on the resolution of questions of fact or on mixed questions of fact and law, the plaintiff may not choose the courts as the forum for the resolution of such questions).

In recently applying this doctrine, this court held that "[a] substantial question will exist 'unless [the] injuries were *clearly* not compensable under the'" statute. *Tredway, supra* at 735 (emphasis in origi-

---

3. The parties and the trial court assumed that an injury caused solely by the employee's intoxicated state or wilful intent to harm another would be outside the Act's coverage. Although such a reading may be logical because this provision is in a section of the Act entitled "coverage," a plausible argument could be made that such injuries are covered by the Act even though they are not compensable under it. *See Decius v. Marriott Corp.*, D.C.App., 402

A.2d 841, 843 (1979); *Tredway v. District of Columbia*, D.C.App., 403 A.2d 732, 734–35 (1979).

4. The doctrine of primary jurisdiction is akin to, but distinct from, exhaustion of administrative remedies. *See McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (exhaustion of remedies); 3 K. Davis, *supra* at § 20.01.

nal) (quoting *Daniels-Lumley v. United States*, 113 U.S.App.D.C. 162, 163, 306 F.2d 769, 770 (1962)); *see Reep, supra* at 208. The employee moreover, must bear the burden of disproving statutory coverage, *see O'Rourke, supra*, 41 N.Y.2d at 225, 391 N.Y. S.2d at 558, 359 N.E.2d at 1352, since the Act enumerates several presumptions favoring coverage. Specifically, 33 U.S.C. § 920 (1976) provides that

> it shall be presumed, in the absence of substantial evidence to the contrary—
>
> (a) That the claim comes within the provisions of this chapter.
>
> .    .    .    .    .
>
> (c) That the injury was not occasioned solely by the intoxication of the injured employee.
>
> (d) That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself or another.

*See Swinton v. J. Frank Kelly, Inc.*, 180 U.S.App.D.C. 216, 222, 225–26, 554 F.2d 1075, 1081, 1084–85, *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976). These presumptions accordingly make Ms. Moss' burden a heavy one in this case.

### III.

■ We therefore turn to the question whether Ms. Moss has sustained her burden of demonstrating that her husband's death was "clearly" outside the Act's coverage. *Tredway, supra* at 735. In considering the trial court's first inquiry—whether Moss' death arose "out of and in the course of [his] employment," 33 U.S.C. § 902(2) (1976) —we note, first, that the Act does not require a causal relationship between the nature of the employment and the accident. *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 507, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951). "Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to this employer." *Id.*

All that the Act requires is that "the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose." *Id.* (quoting *Thom v. Sinclair*, [1917] A.C. 127, 142); *see Tredway, supra* at 736. For example, an injury suffered from an assault may arise out of employment within the meaning of the Act if the reason for the assault is a quarrel having its origin in work. I A. Larson, The Law of Workmen's Compensation § 11.00 (1979); *see In re Tripp's Case*, 355 Mass. 515, 517, 246 N.E.2d 449, 451 (1969); *Johnson v. Nationwide Life Insurance Co.*, 7 Mich.App. 441, 449, 151 N.W.2d 840, 844 (1967); *Hegler v. Cannon Mills*, 224 N.C. 669, 670, 31 S.E.2d 918, 919 (1944). In such a case, the subject matter of the quarrel that led to the assault forms the connection with the employment. *See* I A. Larson, *supra* § 11.12.

■ In the present case, the evidence at trial showed that the quarrel began when Moss returned to close the Oxford Tavern for the night after absenting himself from work for several hours. The dispute evidently grew out of the fact that Harrington expressed his disapproval of Moss' long absence. In light of the statutory requirement that the agency and court presume that any employee's claim comes within the terms of the Act, we conclude that this evidence is sufficient to support the view that the argument between Moss and Harrington arose out of and in the course of employment, and thus raises a "substantial question" as to the applicability of the Act.[5]

■ Similarly, as to the second possible exemption from coverage, we conclude that Ms. Moss has not satisfied the burden of demonstrating that her husband's death resulted solely from his own intoxication or wilful intent to injure another. Because of the statutory presumption that an injury is not occasioned solely by an employee's intoxication or malicious intent, an employer

---

**5.** The fact that a gun was used in the assault would not destroy a connection between the injury and the employment if the gun was kept for business purposes. *See Evening Star Newspaper Co. v. Kemp*, 175 U.S.App.D.C. 89, 93, 533 F.2d 1224, 1228 (1976). There is sufficient evidence in this case to indicate that the gun was kept in the tavern to protect it against robberies.

has a heavy burden in attempting to prove such misconduct (and thus preclude recovery) in a proceeding before the agency. *See* I A. Larson, *supra* § 34.34, at 6–88. Although many courts have denied recovery when an employee's injury stemmed from his own attack on another, *see generally* I A. Larson, *supra* § 11.15(d), a few courts have been willing to grant compensation even in egregious cases of this sort. *Id.* For example, a Louisiana court, dealing with a similar statute, held that a claimant could receive compensation even though he had initiated a fight and was injured when another retaliated with excessive force. *Landry v. Gilger Drilling Co.*, 92 So.2d 482, 484 (La.Ct.App.1957). Similarly, the Massachusetts Supreme Judicial Court approved compensation for an employee who was injured in a struggle that began when he struck a co-worker who had been annoying him with a pipe which the claimant had hidden for that purpose. *In re Tripp's Case, supra* 355 Mass. at 518, 246 N.E.2d at 451.

As to the question whether an employee's injury was occasioned solely by his or her own intoxication, most courts have concluded that a claim was compensable even though the drunkenness was a major cause of the injury. *See* IB A. Larson, *supra* § 34.34. For example, the United States Court of Appeals for the District of Columbia Circuit has held that injuries sustained by an employee when he was assaulted by persons who found him drunk on a street corner were not caused solely by intoxication, because murderous assault was also a cause. *See Maryland Casualty Co. v. Car-*

*dillo*, 71 App.D.C. 160, 163, 107 F.2d 959, 962 (1939).[6]

In view of these cases, we conclude that a substantial question exists as to whether Ms. Moss could have obtained compensation under the Act for her husband's death. She has not sustained the burden of demonstrating clearly, *Tredway, supra*, that Mr. Moss' death did not "aris[e] out of and in the course of employment," 33 U.S.C. § 902(2) (1976), and was not "occasioned solely by the intoxication of the employee [Mr. Moss] or by the willful intention of the employee to injure or kill himself or another." 33 U.S.C. § 903(b) (1976). Accordingly, we hold that the trial judge should have acknowledged the primary jurisdiction of the Benefits Review Board to make an initial determination about the applicability of the Act.

 We therefore remand to the trial court with directions to stay this proceeding until Ms. Moss has had a reasonable time to proceed with an action before the Benefits Review Board.[7] If the Board or a reviewing court[8] concludes that Moss' death is covered by the Act, the trial court must vacate the judgment and dismiss this action. If the conclusion is to the contrary, then the court may award a judgment to Ms. Moss in accordance with the jury's verdict.

*So ordered.*

---

6. Although the jury's findings are not binding on this court in determining if there is a substantial question as to whether Ms. Moss' claim is covered by the Act, *see Shreve v. Hot Shoppes, Inc.*, 110 U.S.App.D.C. 268, 269, 292 F.2d 761, 762 (1961), we note the jury found that (1) both Moss and Harrington had the status of employees at the time of the shooting, and that (2) Moss' death resulted "wholly or in part" from its intoxication or wilful intent to injure another.

7. Although Moss' death occurred in 1975, it may still be possible for Ms. Moss to pursue claim before the Benefits Review Board. *See* 33 U.S.C. §§ 912(d), 913(a) (1976).

It will be better practice, in future cases, for the court itself to determine whether a substantial question of coverage is presented and, if so, to stay the proceedings pending a decision by the Benefits Review Board. This approach will provide for judicial economy while protecting a plaintiff against statute of limitations problems.

8. An appeal from a decision of the Benefits Review Board must be made to the United States Court of Appeals for the District of Columbia Circuit, not to this court. *See* 33 U.S.C. § 921(c) (1976).