Meklete TEKLE, Appellant,

v.

FOOT TRAFFIC, INC., et al., Appellees.

No. 96–CV–381.

District of Columbia Court of Appeals.

Argued April 24, 1997.

Decided Aug. 28, 1997.

---

Kenneth E. McPherson, Riverdale, MD, for appellant.

Stuart L. Plotnick, Silver Spring, MD, for appellees.

Before TERRY, FARRELL and REID, Associate Judges.

REID, Associate Judge:

Appellant Meklete Tekle filed a complaint in the trial court alleging various intentional torts and negligence against appellees Foot Traffic, Inc., and her coemployee/supervisor and manager of her place of business, Salif Fall.[1] The trial court dismissed her complaint on primary jurisdiction grounds after Foot Traffic argued that the case arose under the District of Columbia Workers' Compensation Act ("WCA"), D.C.Code §§ 36–301 *et seq.* (1997). Because we conclude that there is a substantial question whether the WCA applies, we remand this matter to the trial court with instructions to stay the proceeding until appellant has had reasonable time to present her claims to the Department of Employment Services ("DOES") for an initial determination of coverage under the WCA.

**FACTUAL SUMMARY**

Ms. Tekle was employed by Foot Traffic, a Missouri corporation whose principal place of business is in Kansas City, Missouri, as a sales clerk in a retail clothing store located at 3222 M Street, N.W., in the Georgetown Park Mall. She filed a civil complaint in the trial court on May 31, 1995, against Foot Traffic and Salif Fall, her coemployee/supervisor and manager of the store,[2] alleging that on June 1, 1994, Mr. Fall ordered her to a back area of the store, directed her to sign a document and expressed dissatisfaction with her employment performance. After Ms. Tekle signed the document, Mr. Fall ordered her to give him her store keys. She indicated that she wished to call the store's district manager to discuss the document and her employment status. She alleges that Mr. Fall prevented her from making the call and

> with great anger and force, physically restrained [her] by shoving [her] backward and by grabbing [her] around the neck and squeezing her throat. [He] also screamed at [her], in a threatening manner, regarding [her] obligation to follow his directives.

Ms. Tekle's complaint contained six counts, four alleging intentional torts—battery, assault, intentional infliction of emotional distress and false imprisonment—and two asserting negligence and vicarious liability. In all of her counts, she claimed that her "breathing was choked off, she suffered pain and injury to her neck (soft tissue and cervical spine), throat, chest and shoulder," required "emergency medical treatment," and "lost wages and the opportunity to generate favorable employment references from Foot Traffic...." Furthermore, in all of her counts, she variously alleged that she suffered "physical sickness, humiliation, indignity, frustration, emotional anguish and mental distress" (intentional infliction of emotional distress count); "fear, humiliation, indignity,

1. The brief filed on behalf of Foot Traffic was filed in the interest of Foot Traffic and Mr. Salif Fall.

2. Ms. Tekle's complaint alleges that Mr. Fall was ... authorized by Foot Traffic, expressly or impliedly, to establish the work schedule of his subordinates and the nature of their work within the store, dictate policies governing

store employees, impose sanctions on subordinates for matters which [Mr. Fall] believed contravened company or store policies, terminate employment of subordinate employees, and to manage all other matters arising out of the employer-employee relationship of subordinates within the store at Georgetown Park mall.

frustration, mental anguish, and emotional distress" (battery, false imprisonment and negligence and vicarious liability counts); and "fear for personal safety, humiliation, embarrassment, indignity and other forms of emotional anguish and mental distress" (assault count).

Foot Traffic filed a motion to dismiss in July 1995, arguing in part, that the trial court lacked jurisdiction because under D.C.Code § 36–304 (1993), primary jurisdiction rests with the DOES, and that the WCA is the governing authority for Ms. Tekle's claims. Ms. Tekle opposed the motion on the ground, *inter alia*, that "there was no employer-employee relationship at the time of the torts committed by the Defendant's manager" because "she had already been terminated by Foot Traffic at the discretion of its store manager." Generally, she contended that the WCA does not apply to her claims. The trial court denied Foot Traffic's motion to dismiss without prejudice.

On January 23, 1996, following discovery, Foot Traffic filed a "motion for summary judgment and renewal of its motion to dismiss previously filed." Ms. Tekle opposed the motion, asserting that her claims do not fall under the WCA. She again denied the existence of an employer-employee relationship at the time of the assault. She also maintained that she was paid no wages on the day of the assault; and Foot Traffic filed no report of her injury under the WCA. Furthermore, she argued, she has claimed no "temporary or permanent disability as a result of the assault by Mr. Fall on June 1, 1994, nor … [made any assertion] that she suffered any loss of earning capacity or wages as a result of her injuries," and "has not asserted that she suffered any injury compensable under the Workers' Compensation statutes of the District of Columbia" or "filed a claim for such benefits." The trial court granted Foot Traffic's motion without a memorandum decision, saying only "Plaintiff's complaint is dismissed on primary jurisdiction grounds."

### ANALYSIS

Ms. Tekle contends that the trial court committed error in dismissing her complaint because her injuries were not compensable under the WCA since she is not claiming a disabling injury affecting her wage earning capacity. She also argues that she was not an employee within the meaning of the WCA at the time of the assault by Foot Traffic's agent. Foot Traffic argues that the trial court properly dismissed Ms. Tekle's complaint because she was an employee under WCA whose injury arose out of and in the course of her employment. Foot Traffic also maintains that D.C.Code § 36–304 bars her lawsuit against the company, and that her allegations raise a substantial question of coverage under the WCA even though she claims no disabling injury. Thus, Foot Traffic asserts, primary jurisdiction rests with the DOES.

The WCA contains an exclusivity provision which specifies in pertinent part:

> (a) The liability of an employer prescribed in § 36–303 shall be exclusive and in place of all liability of such employer to the employee … and anyone otherwise entitled to recover damages from such employer at law on account of such injury or death.

D.C.Code § 36–304. If the exclusivity provision is deemed applicable in her case, Ms. Tekle's only remedy would be workers' compensation. As Professor Larson explains:

> [o]nce a workmen's compensation act has become applicable either through compulsion or election, it affords the exclusive remedy for the injury by the employee or his dependents against the employer....

6 LARSON'S COMPENSATION LAW, § 65.11 (1997 ed.).

In *Tredway v. District of Columbia*, 403 A.2d 732 (D.C.1979), we said that "the exclusivity provision of [the Federal Employees' Compensation Act] FECA will not bar [a] tort claim unless the injury was sustained in the performance of appellant's duties." *Id.* at 735. We also concluded that "[a] substantial question will exist 'unless [the] injuries were *clearly* not compensable under the F.E.C.A.'" *Id.* (quoting *Daniels–Lumley v. United States*, 113 U.S.App.D.C. 162, 163, 306 F.2d 769 (1962)). *See also Mason v. District of Columbia*, 395 A.2d 399, 402 (D.C.

1978). Similarly, we stated in *Estate of Underwood v. National Credit Union Admin.*, 665 A.2d 621 (D.C.1995):

> when there is a "substantial question" whether the WCA applies, the administrative agency charged with implementing the statute, given its special expertise, has "primary jurisdiction" to "make the initial determination concerning coverage" before the courts can exercise jurisdiction.

*Id.* at 631 (quoting *Harrington v. Moss*, 407 A.2d 658, 661 (D.C.1979)). In *Tredway*, we held that there was a substantial question of coverage and thus, the Secretary of Labor should make the initial determination of coverage. 403 A.2d at 735, 736–37. However, in *Estate of Underwood*, we concluded that injuries allegedly resulting from an employee's emotional distress attributable to sexual harassment were not compensable under the WCA and therefore, the employee could maintain an action at law in the trial court. 665 A.2d at 633.

In light of our precedents, and based upon the factual record presented to us on appeal, where an employee had just been terminated by her coemployee/supervisor and manager of the employment site who allegedly also committed an assault and battery, falsely imprisoned, and inflicted intentional emotional distress on her following notice of her discharge, there are at least two related questions raised regarding the applicability of the WCA's exclusivity provision: (1) whether the employee is claiming the kind of injury that is compensated by the WCA; and (2) whether the alleged injury arose out of and in the course of the employment. Because we conclude that there is a substantial question concerning the applicability of the WCA, we remand this matter to the trial court with instructions to stay the proceeding until Ms. Tekle has had reasonable time to present her claims to the DOES. We provide the following discussion as a guide to the DOES' determination.

### The Occurrence And Nature Of The Injury

■ "In order to receive workers' compensation, an injury must both arise out of and occur within the course of the employment."

*Grayson v. District of Columbia Dep't of Employment Servs.*, 516 A.2d 909, 911 (D.C. 1986) (citations omitted). An injury or disability must also be the type that is compensable under the WCA. In *Tredway, supra,* we said:

> an injured employee may sue his employer where the injury is not of the type intended to be covered by the compensation act ... or where the injury was not sustained "while in the performance of his duty."

403 A.2d at 734 (citing *Mason, supra,* 395 A.2d at 403; *Bailey v. United States*, 451 F.2d 963, 967 (5th Cir.1971); *United States v. Udy*, 381 F.2d 455, 458 (10th Cir.1967)).

District of Columbia Code § 36–301(8) defines disability as "physical or mental incapacity because of injury which results in the loss of wages." Under D.C.Code § 36–301(12), " 'injury' means accidental injury or death arising out of and in the course of employment, ... and includes an injury caused by the willful act of third persons directed against an employee because of his employment." Ms. Tekle maintains that her injury took place after her termination and thus, she was no longer an employee of Foot Traffic at that time. She also argues that she claims no disability within the meaning of the WCA.

Where an employee has alleged negligence or intentional misconduct in a common law action, our cases have reached different conclusions as to whether an injury is the type that is compensable under workers' compensation laws, whether an injury arose out of or in the course of employment, and whether the agency has primary jurisdiction to make an initial determination of coverage under workers' compensation laws. Two cases involved an issue as to whether the injury is the type that is compensable under workers' compensation laws. In both cases no disability or injury compensable under the WCA had been alleged. In *Mason, supra,* an employee sued the District and others for assault and battery, false arrest and false imprisonment, alleging mental suffering, humiliation and embarrassment. We reversed the trial court's dismissal of the common law action, concluding that

the "humiliation" and "embarrassment" claimed by appellant to have caused "mental suffering" in the instant case would not be within the ambit of FECA and hence [the employee] could not recover those damages under FECA.

395 A.2d at 403. We also said:

[t]he complaint of appellant does not allege any disability, total or partial, nor does it allege anything from which a disability on her part might be inferred. · From this we must assume that appellant does not assert that her injury is disabling and also conclude for that reason that FECA on its face does not apply to appellant's complaint.

395 A.2d at 404. Consequently, we determined that neither the nonphysical injury alleged was covered by·the FECA, nor was there any claim of disability. In *Newman v. District of Columbia*, 518 A.2d 698 (D.C. 1986), an employee sued the District and others, *inter alia*, for intentional infliction of emotional distress, alleging humiliation, embarrassment, public ridicule and personal indignity due to his homosexual orientation. In resolving the case, we followed *Mason* and again concluded that:

[b]ecause appellant does not allege an "injury" causing a "disability" which, in combination, would entitle him to guaranteed compensation under the Merit Personnel Act, the exclusivity provision ... has no effect on his ability to exercise whatever common law rights are available to him.

*Id.* at 706. Here, Ms. Tekle also maintains that she has alleged no disabling injury.

At least four cases involving intentional torts have addressed the issue as to whether an injury arose out of or in the course of employment. In *Tredway, supra*, a case concerning a common law action alleging humiliation, embarrassment, mental distress, anguish, pain and suffering due to an assault, robbery and rape of a schoolteacher by two strangers in her classroom after school, we said: "[p]hysical attacks by third parties sustained in the performance of the employee's duties are clearly covered by FECA." 403 A.2d at 735. We distinguished *Mason* on the ground that "*Mason* involved injuries which we held were *not* covered by FECA, namely false arrest and false imprisonment." *Id.* We also said:

[t]he *Mason* decision does not change the rule that there can be no separate recovery for pain and suffering where the underlying injury is covered by the Act.

*Id.* (citation omitted). Because *Tredway* raised "a substantial question as to whether [the] injuries [alleged] arose in the performance of duty," "[w]e conclude[d] [that] the Secretary of Labor must be allowed to 'make the initial determination of coverage to promote uniformity in the application of FECA.'" *Id.* at 733, 736–37.

In *Grillo v. National Bank of Washington*, 540 A.2d 743 (D.C.1988), a case involving a wrongful death action where a bank teller was killed by a bank robber after the bank had removed protective shields from the tellers' windows, we recognized that "[t]he right to maintain a common law tort action is usually exclusive of the right to be compensated under the WCA," *id.* at 747, and that:

when there is a substantial question as to whether an employee's injuries are covered by an employment compensation statute, the employee must first pursue a remedy under the statute, thereby permitting the agency to make the initial decision concerning coverage.

*Id.* at 749.[3] Nonetheless, we concluded that the WCA was applicable because

the injury ... uncontestably occurred in the course of employment. Employees who are physically attacked by third parties while in the performance of their employment duties are typically covered by workers' compensation statutes.... All that is required is that the obligations or conditions of employment create a "zone of special danger" that led to the injury.

540 A.2d at 750 (citations omitted). Although we ruled that injuries resulting from

---

3. We also stated that:

[f]or purposes of primary jurisdiction, we conclude that intentional tort claims under the WCA should be governed by the same standards as the issue whether the injury occurred in the course of employment.

540 A.2d at 749.

an attack by third parties are covered under the WCA, we also said that:

> by definition, injuries to an employee that are *intended* by the employer fall outside of the WCA's exclusivity provisions, even though they are work-related, because they are nonaccidental.

*Id.* at 748 (citing *Rustin v. District of Columbia,* 491 A.2d 496, 501–02 (D.C.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 343, 88 L.Ed.2d 290 (1985)) (other citations omitted).

*Harrington, supra,* concerned a wrongful death action relating to an employee of a tavern who was killed by his employer. The employee had left the tavern for several hours even though he was on duty. When he returned to the tavern, he was intoxicated, had an altercation with his employer, left the tavern and was pursued and shot by the employer. We indicated that the WCA

> does not require a causal relationship between the nature of the employment and the accident.... All that the Act requires is that "the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose."

407 A.2d at 662. Furthermore, we said:

> [i]n light of the statutory requirement that the agency and court presume that any employee's claim comes within the terms of the Act, we conclude that [the] evidence is sufficient to support the view that the argument between [the employee] and [the employer] arose out of and in the course of employment, and thus raises a "substantial question" as to the applicability of the Act.

*Id.* (footnote omitted). Consequently, an initial determination by the Benefits Review Board was required. *Id.* at 663.

In *Estate of Underwood, supra,* an employee (who died while her appeal was pending) sued her employer and others for sexual harassment and for intentional infliction of emotional distress. We concluded that her infliction of emotional distress claim was not governed by the WCA because "injuries resulting from emotional distress attributable to sexual harassment were not statutory 'injuries' 'arising out of' ... employment." 665 A.2d at 634. One member of the panel concluded that "the plaintiff suffered a serious

disabling injury as a result of the workplace actions of her superior," and thus an initial determination of coverage should have been made by the agency. *Id.* at 649 (Steadman, J., concurring in part and dissenting in part).

Other jurisdictions have examined whether injuries alleged in intentional tort actions arose out of and in the course of the employment, and whether they are compensable under the workers' compensation act. *See Sutter v. First Union Nat'l Bank of Virginia, Inc.,* 932 F.Supp. 753, 760 (E.D.Va.1996) (injuries allegedly resulting from intentional infliction of emotional distress, assault and battery found compensable under workers' compensation act even though "the injury occurred shortly after the employee was fired but before she left the employer's premises"); *Mangin v. Westco Sec. Sys., Inc.,* 922 F.Supp. 563, 566 (M.D.Fla.1996) ("claim for intentional infliction of emotional distress arising from sexual harassment or battery is not barred by the exclusivity rule because it addresses an injury to intangible personal rights"); *Adams v. National Bank of Detroit,* 444 Mich. 329, 508 N.W.2d 464, 466 (1993) ("[b]ecause 'there is no relation between the kind of injuries envisioned by the Workers' Compensation law and the injury' to the liberty interest that is caused by false imprisonment, the exclusive remedy provision does not bar this cause of action"); *Byrd v. Richardson–Greenshields Sec., Inc.,* 552 So.2d 1099, 1104 (Fla.1989) ("to the extent that the claim alleges assault, intentional infliction of emotional distress arising from sexual harassment or the specific type of battery involved in this case [touching of female employees by male employees], the exclusivity rule also will not bar them" because they involve "an injury to intangible personal rights"); *Loges v. Mack Trucks, Inc.,* 308 S.C. 134, 417 S.E.2d 538, 540, 541 (1992) ("allegations of intentional infliction of emotional distress, assault and battery ... constitute personal injuries within the scope of the [Workers' Compensation] Act"; "to the extent it alleges damages arising out of and in the course of her employment as a result of the intentional infliction of emotional distress, assault, and battery by [coemployee] ... appellant's cause of action against [employer] is barred by the exclusivi-

ty provision of the Workers' Compensation Act"). *See also* LARSON, *supra,* § 68.31 (false imprisonment), § 68.34 (intentional infliction of emotional distress).

Here, Ms. Tekle asserts that she was terminated prior to the conduct constituting the alleged intentional torts, and hence, the torts did not arise in the course of her employment. However, the conduct took place on the employer's premises. Moreover, the conduct grew out of Mr. Fall's efforts to terminate her.

Based upon the record on appeal and our foregoing examination of precedent, we conclude that there is a substantial question as to whether the claims advanced by Ms. Tekle in her complaint are compensable under the WCA. Accordingly, we remand this matter to the trial court with instructions to stay the proceeding until appellant has had reasonable time to present her claims to the DOES for an initial determination of coverage under the WCA, including: (1) whether Ms. Tekle sustained a disabling injury within the meaning of the WCA; and (2) whether her alleged injuries arose out of and in the course of her employment.

*So ordered.*