Mildred **GRAYSON**, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES**, Respondent,

and

**Washington Metropolitan Area Transit Authority**, Intervenor.

No. 85–813.

District of Columbia Court of Appeals.

Argued May 13, 1986.
Decided Oct. 24, 1986.

Leonard P. Buscemi, Landover, Md., for petitioner.

Beverly J. Burke, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief for respondent.

Michael L. Zimmerman, with whom Bruce D. White, Washington, D.C., was on brief for intervenor.

Before NEWMAN and FERREN, Associate Judges, and GALLAGHER, Senior Judge.

NEWMAN, Associate Judge:

Mildred Grayson challenges the denial of her claim for workers' compensation for an injury she received while pulling out of a parking space during her lunch break. Grayson claims that the Department of Employment Services (DOES) incorrectly found that her injury did not arise from her employment since it occurred during her lunch break. We affirm.

On March 17, 1983, Mildred Grayson, a bus operator, stopped her bus near the Washington Metropolitan Area Transit Authority (WMATA) garage on 14th Street, N.W., was relieved by another bus operator, and started her lunch break. On this particular day, her lunch period was only 20 minutes long since she was scheduled to relieve another operator immediately thereafter.[1] Intending to pick up a fish for lunch, Grayson walked over to Randolph Street where her car was parked, got in, started it and pulled away from the curb. Despite a precautionary look behind her before pulling out, Grayson was struck by a truck and injured.

Due to her injuries, Grayson was unable to work from March 17 to April 7, 1983; she filed for workers' compensation under the Workers' Compensation Act of 1979, D.C.Code § 36–302 et seq. (1981). Specifically, she sought temporary total disability benefits and payment of her medical expenses. The Hearing Examiner recommended that Grayson's claim be approved. DOES' Director adopted this recommendation in his Proposed Compensation Order. However, after reviewing WMATA's written exceptions and arguments, the Director

---

1. The length of each bus operator's lunch break depends on what route and time of day he or she works. By union contract, a lunch break cannot be less than 20 minutes long. However, if a relief operator does not appear at the scheduled time, the bus operator must continue to drive the route through the lunch break.

reconsidered this proposed order and issued a final order denying Grayson's claim for compensation. In doing so, the Director interpreted the phrase "arising out of employment" in a different manner than in the proposed order. This petition for review followed.

In order to receive workers' compensation, an injury must both arise out of the employment and occur within the course of the employment. *See* D.C.Code §§ 36–301(12), –303 (1981); 1 Larson, *The Law of Workmen's Compensation* § 6.10 (1984); *see also Monahan v. Hoage*, 67 U.S.App. D.C. 174, 90 F.2d 419, 420 (1937). Generally, both requirements must be met before an injured employee can be compensated.[2]

The Director of DOES found that Grayson's injury occurred in the course of her employment, despite the general rule that the occurrence of employee injuries sustained off the work premises, while enroute to or from work, do not fall within the category of injuries "in the course of employment." *See* 1 Larson, *supra,* § 15.00. In reaching this conclusion, the Director adopted the paid lunch exception to the "coming or going" rule. *Id.* at § 15.52.[3]

In analyzing the "arising out of employment" requirement the Director applied a standard akin to the positional-risk standard detailed in Larson's treatise, *supra,* § 6.50. The director noted as follows:

> For an employee's injury to have arisen out of the employment the obligations or conditions of employment must have exposed the employee to the risks or dangers connected with the injury.

Order at 7.[4]

The positional-risk standard as set forth by Larson and the Director's slightly varied standard are both similar to a "but for test." "An injury arises out of the employment if it would not have occurred *but for* the fact that conditions and obligations of the employment placed claimant in a position where he was injured." 1 Larson, *supra,* § 6.50 (emphasis in original). A growing number of courts have adopted the positional-risk standard;[5] however, it is but one of five standards used by different jurisdictions to interpret the phrase "aris-

---

**2.** Grayson claims that these requirements are not separate; if an injury is found to occur in the course of the employment, it necessarily must arise from the employment. Although the fact that an injury or death occurs in the course of employment strengthens the presumption that it arises out of the employment, *Wheatley v. Adler,* 132 U.S.App.D.C. 177, 407 F.2d 307, 312 (D.C.Cir.1968) (en banc), the United States Court of Appeals for the District of Columbia Circuit, construing the Longshoreman's and Harbor Worker's Compensation Act, 33 U.S.C. § 901 *et seq.,* has consistently held that "'the injury must both arise out of and also be received in the course of employment.... [n]either alone is enough.'" *Mortan v. Hoage,* 63 U.S.App.D.C. 355, 356, 72 F.2d 727, 728 (D.C.Cir. 1934) (quoting *In re McNichol,* 215 Mass. 497, 102 N.E. 697 (1916). D.C. Circuit cases interpreting provisions of the Longshoreman's Act provide persuasive authority in interpreting virtually identical provisions of the Workers' Compensation Act. *See Dunston v. District of Columbia Department of Employment Services,* 509 A.2d 109, 111 n. 2 (D.C.1986). Here, D.C.Code § 36–301(12) is identical to 33 U.S.C. § 902(2).

**3.** [C]ontinuance of an employee's wages during the lunch period is sufficient to bring activities during the lunch period within the "paid lunch exception.... [C]ontinuance of wages is an incident of services to an employer and serves the employer's interest."

**4.** Compare this formulation with Larson's articulation of the positional-risk test:
> An injury is compensable if it would not have happened but for the fact that the conditions or obligations of the employment put claimant in the position where he was injured.
1 Larson, *supra,* § 6.50 (emphasis in original). Although the Director states that his standard is not the positional-risk test, Order at 7 n. 4, what difference the Director perceives between these two tests is not stated.

**5.** Jurisdictions that have adopted the positional-risk test include New York, Michigan, New Jersey, Louisiana, Georgia and Colorado. *See Hughes v. Trustees of St. Patrick's Cathedral,* 245 N.Y. 201, 156 N.E. 665 (1927). *Whetro v. Awkerman,* 383 Mich. 235, 174 N.W.2d 783 (1970); *Mixon v. Kalman,* 133 N.J.L. 113, 42 A.2d 309 (1945); *Harvey v. Caddo De Soto Cotton Oil Co.,* 199 La. 720, 6 So.2d 747, 751 (1942); *National Fire Ins. Co. v. Edwards,* 152 Ga.App. 566, 263 S.E.2d 455, 456 (1979); *London Guarantee & Accident Co. v. McCoy,* 97 Colo. 13, 45 P.2d 900 (1935).

ing in the course of employment."[6] *See* Larson, *supra*, §§ 6.00, 6.10.

■ The standard used by the Director in this case is a liberal one and furthers the purpose of workers' compensation, which is to provide financial and medical benefits to employees injured in work-related accidents. *See Matter of District of Columbia Workmen's Compensation Act*, 180 U.S.App.D.C. 216, 554 F.2d 1075, 1084 (1976). The standard minimizes, if not eliminates the concept of fault in worker compensation claims.

> Fault has nothing to do with whether or not compensation is payable. The economic impact on an injured workman and his family, is the same whether the injury was caused by the employer's fault or otherwise.

*Whetro v. Awkerman, supra*, 383 Mich. 235, 242, 174 N.W.2d 783, 785 (1970) (adopting the positional-risk standard similar to that used by the Director in our case). It also accords with the general policy that workers' compensation statutes should be liberally construed. *See Wheatley v. Adler, supra*, 132 U.S.App.D.C. at 183–84, 407 F.2d at 313–14; *Baltimore & Philadelphia Steamboat Co. v. Norton*, 284 U.S. 408, 414, 52 S.Ct. 187, 189, 76 L.Ed. 366 (1932). "This court must, of course give great weight to any reasonable construction of a regulatory statute adopted by the administrative agency charged with its enforcement." *Gomillion v. District of Columbia Department of Employment Services*, 447 A.2d 449, 451 (D.C.1982). Although Grayson challenges the standard used by DOES, she fails to articulate why it is unreasonable.[7] Since we perceive no unreasonableness in DOES' use of its chosen standard, it was not error for the Director to apply it to this case. The Director applied the standard to the Hearing Examiner's findings of fact and concluded that Grayson's injuries did not arise out of her employment. The Director observed that Grayson's lunch breaks were completely unsupervised and she was free to go anywhere or do anything she wanted during them. Also, WMATA did not require or encourage Grayson to purchase lunch elsewhere or use her car as WMATA provided an eating area for its employees at the garage with tables, benches and vending machines. Since Grayson was free to do anything she wanted on her lunch break, the Director concluded that

> in no sense then can it be said that the conditions of claimant's employment as a busdriver exposed her ... to the dangers

6. The four other standards are the peculiar-risk, increased-risk, actual-risk and proximate cause tests. Under the peculiar-risk test, the employee has to show that the source of the harm was peculiar to his employment. Larson, *supra* at § 6.20. The increased-risk test focuses on the "increased *quantity* of a risk that is *qualitatively* peculiar to the employment." *Id.* at § 6.30. The actual-risk test does not require a peculiar or increased risk, so long as the employment itself subjects the employee to the damaging risk. *Id.* at § 6.40. Under the proximate cause test, the harm must be a foreseeable risk of the employment and the chain of causation must be unbroken by an independent, intervening cause. *Id.* at § 6.60. Larson notes that the peculiar-risk and proximate cause tests are "virtually obsolete." *Id.* § 6.10.

7. Since Grayson repeatedly shifts her arguments, her challenge to this standard is not particularly consistent or clear. Initially, Grayson argues that her 20 minute lunch break was more like a coffee break than a lunch break, although she fails to indicate what standard DOES should use to analyze accidents occurring during coffee breaks. Later, Grayson argues that the nexus between an accident and employment is "simply a factual determination of causation." This is a clear challenge to the application of any standard to determine whether an injury arises in the course of employment. Then, in her reply brief, Grayson concedes the need for a standard and states: "To date, this court has not undertaken to define, or to establish a test for the determination of, the term 'arising out of,' notwithstanding the fact that the term has been of significance in several ... recent decisions...." In her next paragraph, and in her final shift, Grayson apparently accepts the Director's standard and argues that the Director "failed to determine whether the findings of the Chief Hearing Examiner met this standard by substantial evidence."

attendant the personal use of her automobile during her lunch break.

Order at 8.

The Director also rejected the Hearing Examiner's conclusion that the lunch break created a "condition of special strain" by its short length and the fact that Grayson was required to relieve another bus operator at its end. The Director wrote:

> I am unaware of any employment whereby employees are not required to return from lunch within certain time limits, often with the expectation that their return will relieve other employees. I am also familiar with many kinds of jobs which impose a half-hour lunch break time limit. The fact that claimant's lunch break might have been twenty minutes rather than one-half hour does not present a situation where Claimant is under special strain since she knew the extent of the period of her lunch break days in advance and since such lunch breaks were regularly scheduled.

Order at 8–9. The Director noted that the special strain exception only applied when the stresses of the day were unusual, unexpected or particularly burdensome, *see* Larson, *supra*, § 15.52, but did not ordinarily apply in situations such as the present one, "[w]here the time constraints under which an employee must operate are known well in advance and regularly scheduled and

where such limits are common to many of the employer's other employees."

 We hold therefore that the Director's decision is rationally related to the findings of fact. *See Kenmore Joint Venture v. District of Columbia Board of Zoning Adjustment*, 391 A.2d 269, 276 (D.C.1978) ("We may not substitute our own judgment so long as there is a rational basis for the ... [agency's] decision.")[8]

*Affirmed.*

---

8. Grayson claims that the Director exceeded his powers when he rejected the Hearing Examiner's "factual conclusion" that Grayson was entitled to compensation. She also argues that the Director is limited to a substantial evidence review of the Examiner's findings.

Grayson is correct that the Director must affirm findings of fact if they are supported by substantial evidence. D.C.Code § 36–322(b)(2); *Dell v. DOES*, 499 A.2d 102, 108 (D.C.1985). However, we disagree with her characterization of the Hearing Examiner's determination as a "factual conclusion." Rather, this determination was the result of his application of what he thought to be the relevant legal standards to the facts as he found them. The Director determined that the legal standards he applied were erroneous. He failed to separately apply both the "arising out of employment" and the "occurring within the course of employment" require-

ments of the statute, and failed to use the positional risk standard to analyze the former. In addition, he wrongly interpreted the "special strain" exception, concentrating on the duration of the lunchbreak, rather than considering whether "the time constraints under which [the] employee must operate are well known in advance and regularly scheduled and ... [whether] such limits are common to many of the employer's other employees."

Although the Director is bound to affirm findings of fact which are supported by substantial evidence, he need not approve a decision which also rests upon erroneous legal principles. Under D.C.Code § 36–322(b)(1), the Mayor may set aside a compensation order which is "not in accordance with this chapter." (Note that the Mayor has delegated all his functions under this act to the DOES Director.) *See* Mayor's Order No. 82–1216, 29 D.C.Reg. 2843 (1982).