**GEORGETOWN UNIVERSITY,**
Petitioner,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**Lavern R. Bentt, M.D., Intervenor.**

**No. 01–AA–877.**

District of Columbia Court of Appeals.

Argued Nov. 26, 2002.
Decided Aug. 21, 2003.

Bonnie J. Brownell, Washington, DC, for petitioner.

Leslie D. Oliveri, Lanham, MD, for intervenor.

Robert I. Rigsby, Corporation Counsel at the time the statement was filed, and Charles L. Reischel, Deputy Corporation Counsel at the time the statement was filed, filed a statement in lieu of brief for respondent.

Before SCHWELB and FARRELL, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

This is not a typical workers' compensation case. In a reversal of usual roles, the petitioning employer seeks a holding that its employee's injury was compensable, while the employee asks that we uphold the decision that she was not entitled to compensation.

This role reversal is due to the exclusivity provision of the Workers' Compensation Act.[1] The employee would prefer to go forward with her pending Superior Court tort suit against the employer, while the employer prefers to pay compensation, and have its employee's tort action dismissed.

## I.

Petitioner Georgetown University (hospital) seeks review of the decision of the Department of Employment Services ("DOES") that the injured claimant, Lavern Bentt, M.D., is not entitled to compensation under the District of Columbia Workers' Compensation Act of 1979(Act), D.C.Code §§ 36–301 et. seq. (1981, as amended) (since recodified at § 32–1501)

(2001). The hospital contends that DOES erred in, (1) failing to address the issue of whether the injections administered to Dr. Bentt by her supervising physician at the workplace while she was on the job to relieve her tendinitis brought about what constituted an accidental injury under the Act, (2) in failing to conclude that Dr. Bentt's initial tendinitis itself was an accidental injury under the Act, and (3) in affirming the hearing examiner's compensation order even though it failed to find that, even if the tendinitis was not initially caused by an injury at work, it was aggravated by the physical requirements of the job or by the injections administered to her by her supervisor to alleviate it. We agree that the decision of the Director is inadequate as to the first and third issues raised by petitioner, and we therefore reverse and remand for further proceedings.

## II.

In 1994, claimant Lavern Bentt, M.D., was employed as a fellow at the Georgetown University Hospital. She worked from 8:00 a.m. to 3:00 p.m. or 5:00 p.m. five days a week in the chronic pain clinic. On October 2, 1994, Dr. Bentt experienced some "difficulty" in her left lower ankle when she attended on her own time a banquet while wearing tight shoes. At the beginning of the following work week she "noticed [she] was having a new discomfort in her left ankle...."

During the ensuing work days, Dr. Bentt's colleagues and her supervisor,

---

1. D.C.Code § 36–304 (1981, as amended) (since recodified at § 32–1504) (2001). A leading treatise explains the reason for the exclusivity provision as follows:

Once a workers' compensation act has become applicable either through compulsion or election, it affords the exclusive remedy for the injury by the employee or the employee's dependents against the employer and insurance carrier. This is part of the

quid pro quo in which the sacrifices and gains of employees and employers are to some extent put in balance, for while the employer assumes a new liability without fault, it is relieved of the prospect of large damage verdicts.

Arthur Larson, et al., Larson's Workers' Compensation Law § 100.01 (May 2000) (citations omitted).

Charles A. Buzzanell, M.D., noticed that she was limping throughout the day and he offered to treat her condition. She declined but, on or about October 6, 1994, when Dr. Buzzanell offered again to administer a nerve block to Dr. Bentt's left ankle area, she accepted. They went to a treatment room at a time they had agreed upon and, in the presence of the senior resident, Dr. Buzzanell administered the injection. The ankle then, "felt a lot better." She "thanked him very much, and ... continued on with [her] day." Although the injection provided temporary relief, the next day the pain returned. At Dr. Bentt's request, Dr. Buzzanell administered a second nerve block on October 7, 1994, which contained a lower level of steroids. The second nerve block did not reduce the level of pain for long, and after several days Dr. Bentt sought other medical attention. Over a period of time, Dr. Bentt's pain lessened. However, the skin in the area in which the nerve block injections were administered became ulcerous. Dr. Bentt had to have surgery to cover the ulcerated region.

### III.

The administrative agency ruling being reviewed here was precipitated by a medical malpractice lawsuit that was filed by Dr. Bentt against petitioner Georgetown University in the Superior Court of the District of Columbia. Before the matter was tried, the hospital moved for summary judgment on jurisdictional grounds, citing the exclusivity provision of the District of Columbia Workers' Compensation Act. Mindful of the holding of this court in *Harrington v. Moss*, 407 A.2d 658, 661–62 (D.C.1979), the Superior Court stayed the civil matter in order to permit the Department of Employment Services to determine whether it has jurisdiction over the matter pursuant to the Workers' Compensation Act. Thus the trial court properly deferred to the administrative agency having primary jurisdiction over the issue of compensability under the Act. *See Joyner v. Sibley Mem'l Hosp.*, No. 01–CV–124, 826 A.2d 362 (D.C.2003) (stay, rather than dismissal, of tort action is appropriate to enable DOES to consider coverage of Workers' Compensation Act).

A claim for workers' compensation was filed in which Dr. Bentt was the claimant. An evidentiary hearing was held before a hearing and appeals examiner. The hearing focused on whether Dr. Bentt sustained an injury which arose out of and in the course of her employment. The hearing examiner issued a compensation order concluding that Dr. Bentt did not sustain "an accidental injury arising out of and in the course of her employment on or about October 2, 1994."

The hospital filed an application for review with the Office of the Director of the Department of Employment Services seeking a reversal of the hearing examiner's decision. Dr. Bentt filed a response. The Director issued a decision affirming the hearing examiner's order denying compensation.

The Director concluded that the hospital's argument for the application of this jurisdiction's aggravation rule was not persuasive. The Director further found that a later fall at work did not aggravate Dr. Bentt's condition as it injured her knees (rather than her ankle). He also found that substantial evidence supported the hearing examiner's finding that claimant's original ankle injury was not work-related and that, therefore, the so-called "dual capacity" doctrine was not triggered and the exclusivity provision of the Act did not apply. The hospital asks that we reverse and remand for further hearing.

### IV.

██ This court's review of decisions of administrative agencies is limited to de-

termining whether the order "is in accordance with law and supported by substantial evidence in the record." *Joyner v. District of Columbia Dep't of Employment Servs.*, 502 A.2d 1027, 1029 (D.C.1986) (citing D.C.Code §§ 1–1510(a)(3)(A) and (E) (1981), made applicable by D.C.Code §§ 36–322(B)(3) (1981) (both recodified as § 2–510 and § 32–1522 respectively)). This court must affirm an agency decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Clark v. District of Columbia Dep't of Employment Servs.*, 772 A.2d 198, 201 (D.C.2001). The Director of the Department of Employment Services can affirm a compensation order only if the findings of fact contained therein are supported by substantial evidence in the record, considered as a whole, and the law has been properly applied. D.C.Code § 32–1522 (2001) (formerly § 36–322); 7 DCMR § 309 (2003). This court defers to the determination of the Director of DOES as long as the Director's decision flows rationally from the facts, and those facts are supported by substantial evidence in the record. *See Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 683 A.2d 470, 472 (D.C.1996). If so, the court's consideration ends. *See Shepherd v. District of Columbia Dep't of Employment Servs.*, 514 A.2d 1184, 1186 (D.C.1986). "Substantial evidence is more than a mere scintilla." *Children's Def. Fund v. District of Columbia Dep't of Employment Servs.*, 726 A.2d 1242, 1247 (D.C.1999). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "[C]redibility determinations of a hearing examiner are accorded special deference by this Court." *Olson v. District of Columbia Dep't of Employment Servs.*, 736 A.2d 1032, 1037 (D.C.1999).

██ With respect to whether a claimant sustained an accidental injury arising out of and in the course of her employment, the Act mandates that it be presumed, in the absence of evidence to the contrary, that a claim comes within the purview of the Act. D.C.Code § 32–1521(1) (2001) (formerly § 36–321(1) (as amended)); *Ferreira v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 651, 655 (D.C.1987), remanded to 667 A.2d 310 (D.C.1995). This presumption is fully applicable where a compensation claim is brought to determine whether an employer may successfully raise the exclusivity provision of the Workers' Compensation Act as a defense to an action in tort. *Harrington, supra*, 407 A.2d at 662. The presumption can make the claimant's burden a heavy one. *See id.* The presumption is designed to effectuate the important humanitarian purposes of the statute and reflects a "strong legislative policy favoring awards in arguable cases." *Ferreira, supra*, 531 A.2d at 655. To invoke this presumption, a party must make some "initial demonstration" of (1) an injury; and (2) a work related event, activity, or requirement which has the potential of resulting in or contributing to the injury. *Id.* Thus, to establish a right to compensation before the agency, claimant must introduce evidence of both an injury and a relationship between that injury and the employment. *See, e.g., Whittaker v. District of Columbia Dep't of Employment Servs.*, 668 A.2d 844 (D.C.1995). When the preliminary evidence has satisfied this threshold requirement, the burden of production shifts to the employer to present substantial evidence which is "specific and comprehensive enough to sever the potential connection between a particular injury and a job-related event." *Parodi v. District of Columbia Dep't of Employment Servs.*, 560 A.2d 524, 526 (D.C.1989). Absent such evidence, the claim will be

deemed to fall within the scope of the Act, *Id.* at 526, and a causal relationship will also be presumed. *Ferreira, supra,* 531 A.2d at 655. When evidence is presented that is sufficient to sever the injury from the work and overcome the presumption that a claimant's injury stems from any work-related event, activity or requirement, the presumption falls from consideration and all evidence submitted must be weighed without recourse to the presumption. Conversely, where a party fails to rebut the *prima facie* case, the presumption of compensability supplies the legally sufficient nexus between claimant's condition and her injury as well as the causal relationship between the injury and her employment. *Parodi, supra,* 560 A.2d at 526.

### V.

The first stage of the analysis is whether an "initial demonstration" was made that was sufficient to invoke the Act's presumption of compensability of the claim. The hearing examiner found that there was sufficient evidence of record to invoke the presumption of compensability, noting that Dr. Bentt's job required extensive walking and standing and that her condition worsened over the course of her working for employer. The hearing examiner also cited the March 8, 2000, medical report of John B. Cohen, M.D., an orthopedic surgeon, who observed that "claimant's work activities could easily have caused or aggravated her Achilles tendinitis . . . ."

Dr. Bentt (rather than the employer who typically would do so) attempted to overcome the threshold showing of the compensability of her injury, i.e., that it arose out of and in the course of her employment, and to sever the presumed causal relationship between her work and her subsequent physical condition. She testified that she had experienced no left foot or ankle pain prior to the October 2, 1994, banquet and that the tight shoes she had worn at the banquet had triggered that "difficulty." She also presented evidence in the form of two independent medical evaluation reports that indicated not only that her shoes caused her left ankle condition but also that her work played no role in bringing about her original ankle problem. Dr. Bentt cited the report of Richard H. Conant, M.D., an orthopedic surgeon, who stated, "[i]n my opinion, within a reasonable medical probability, her condition did not arise from her normal work activities." She also relied upon the report of another orthopedist, Major P. Gladden, M.D., who stated, "I feel that her primary problem initially was the retrocalcaneal bursitis, which was non-work related, most likely related to the wearing of the shoes and the tendinitis was a subsequent complication and the complication resulted from the injection."

The hospital's first argument on appeal is that DOES erred in failing to address the issue of whether the injections administered to Dr. Bentt at her work place while she was on the job caused what constitutes an accidental injury under the Act. There was evidence that she was limping around on the job as she did her rounds and did the other walking that was required in her work in the pain management section. The record offers strong support for the hospital's position that Dr. Bentt's supervisor, Dr. Buzzanell, administered the injections to her in order to lessen her discomfort at work and to enable her to be pain free, both as she performed her work and otherwise, and that the administration of the injections arose out of Dr. Bentt's employment and in the course of her work.

The hearing examiner concluded that "the conditions of claimant's employment did not play a role in her original left foot

and ankle conditions, which first manifested itself on or about October 2, 1994." Subsequently, after observing that the bulk of the medical evidence focused on the treatment Dr. Bentt received after administration of the nerve block injections by her supervisor the hearing examiner stated: "Having determined that the initial condition was not compensable, this evidence becomes irrelevant." As we will explain, this view of the relevance of the injections and their results is not sustainable. The hearing examiner also found irrelevant the "dual capacity" doctrine, a conclusion with which we agree. See Ray v. District of Columbia, 535 A.2d 868 (D.C. 1987) (dual capacity doctrine may apply when claimant who has experienced work-related injury also claims to have suffered injury when dealing with employer in different capacity).

A case from another jurisdiction, McDaniel v. Sage, 174 Ind.App. 71, 366 N.E.2d 202 (1977) dealt with circumstances similar to those present here. While on the job, McDaniel experienced weakness and light headedness from a cause not related to his work. He sought treatment from his employer's medical staff located in the same building where he worked. The staff physician directed the staff nurse to give McDaniel an injection. As the result, allegedly, of the manner in which the nurse administered the injection, McDaniel's ulnar nerve was permanently damaged. The appellate court affirmed the trial court's ruling that McDaniel's exclusive remedy against his employer was workers' compensation, concluding that even for a non-work related illness or injury, the medical treatment was "so incidental to employment as to be considered to have arisen out of the employment. The services supplied by the employer in such a circumstance are reasonably necessary for the health, comfort, and convenience of the workmen." Id. at 205.

■ In evaluating whether an injury "arises out of" employment, this court has adopted the positional-risk standard discussed in Grayson v. District of Columbia Dep't of Employment Servs., 516 A.2d 909 (D.C.1986). In Grayson, this court observed that this is a "liberal" standard which obviates any requirement of employer fault or of a causal relationship between the nature of the employment and the risk of injury. See id. at 912. Furthermore, an employee need not be engaged in activity of benefit to the employer at the time of the injury. See Harrington, supra, 407 A.2d at 662. Under the positional-risk test, an injury arises out of employment so long as it would not have happened but for the fact that conditions and obligations of the employment placed claimant in the position where she was injured. See Grayson, supra, 516 A.2d at 911 & n. 4. In this case, the offer of Dr. Buzzanell to give Dr. Bentt the injections arose directly from Dr. Bentt's limping and obvious discomfort as she performed her work. We are reluctant, however, to rule conclusively that the injections and the resulting aggravation or complication of Dr. Bentt's original ankle injury arose out of and in the course of her employment. The record before us does not include the depositions of Dr. Bentt and Dr. Buzzanell (other than an excerpt) that were taken in the Superior Court action, and were referred to frequently in petitioner's brief. Although the existing record could itself serve as an adequate basis for that conclusion, we think it is the better course to return the case to the agency so that a hearing examiner may address the causal significance of the injections—something he did not do originally—and make appropriate findings of fact and conclusions of law. See Spartin v. District of Columbia Dep't of Employment Servs., 584 A.2d 564, 572–73 (D.C.1990) (when agency fails to make

finding on material contested issue, court cannot fill gap by making its own determination from the record).

## VI.

 The hearing examiner's and Director's rulings also fail to address adequately the issue of aggravation. It is well established in the District of Columbia that a disability resulting from the aggravation of a pre-existing condition is compensable under the Workers' Compensation Act. *See* D.C.Code § 32–1508(6)(A) (2001) (formerly § 36–308(6)(A)); *Washington Hosp. Ctr. v. District of Columbia Dep't of Employment Servs.*, 744 A.2d 992, 997 (D.C.2000). This is true even where non-employment factors contributed to claimant's malady. *See Ferreira, supra,* 667 A.2d at 313. *See also Brown v. District of Columbia Dep't of Employment Servs.*, 700 A.2d 787, 791 (D.C.1997) (in denying benefits, DOES did not give adequate consideration to evidence of work-related injury and any recurrence, aggravation or exacerbation of injury thereafter). If an employee experiences a work-related injury which, combined with a previous disability or physical impairment (work-related or non-work related) causes substantially greater disability or death, the liability of the employer shall be as if the subsequent injury alone caused the subsequent amount of disability. *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 704 A.2d 295, 297–99 (D.C.1997).

In *Clark*, supra, 772 A.2d 198 at a telephone operator experienced pain in her jaw and the right side of her face. She was diagnosed with a temporomandibular joint condition (TMJ) and told to stop wearing her telephone headset at work. She filed for workers' compensation benefits for the disability. A hearing examiner concluded that the TMJ did not arise out of, or in the course of, her employment, and denied her claim. The Director affirmed the decision. On appeal, the operator argued that DOES had failed to consider whether the TMJ, which she acknowledged was initially caused by factors unrelated to work, was aggravated by her work-related duties. This court noted that the evidence of record included the opinion of her treating physician that wearing the headset with an earpiece inserted into the ear aggravated her underlying condition and caused pain and irritation. We reversed and remanded on this point. *See also Waugh v. District of Columbia Dep't of Employment Servs.*, 786 A.2d 595, 600 (D.C.2001) (disability resulting from aggravation of persisting condition is compensable); *Brown supra,* 700 A.2d at 791–92 (Act covers complications that are direct and natural result of a compensable injury).

 In this case, the aggravation issue was not discussed by the hearing examiner and mentioned only briefly by the Director. The Director states that the "self-insured Employer's argument to apply this jurisdiction's 'aggravation rule' is not persuasive." The Director found that there was no medical evidence in the record showing that Dr. Bentt's *work activities* aggravated or contributed to a worsening of her left ankle condition.[2] The Director failed, however to consider whether Dr. Buzzanell's injections aggravated or complicated an existing injury.

As noted above, Dr. Bentt's witness, Dr. Gladden, stated that the injections brought about a complication of the tendinitis.

---

2. The Director further states that the record contains evidence that the claimant fell at work and hurt her knees, but not her ankle.

The Director fails to address the record evidence that Dr. Bentt's fall tore the "z-plasty" at the site of the ulceration.

This issue of aggravation or complication overlaps the issue of whether Dr. Buzzanell's injections brought about an accidental injury under the Act. In addressing the related issues on remand of this case, DOES may, of course, reopen the record.

### VII.

Finally we have considered petitioner's remaining point—that DOES erred in concluding that Dr. Bentt's initial ankle injury was not itself an accidental injury under the Act—and are not persuaded. The relevant findings are supported by the record. The hearing examiner resolved the controlling issue of credibility in Dr. Bentt's favor.

*Reversed and remanded for further proceedings consistent with this opinion.*