*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 18-AA-479

DEANNE NILES, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, INTERVENOR.

On Petition for Review of an Order of the
District of Columbia Department of Employment Services
Compensation Review Board
(CRB-32-18)

(Submitted February 22, 2019                    Decided October 10, 2019)

*David M. Snyder*, with whom *Kevin H. Stillman*, was on the brief, for petitioner.

*Stacy L. Anderson*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General, *Loren L. Alikhan*, Solicitor General, and *Caroline S. Van Zile*, Deputy Solicitor General, filed a statement in lieu of a brief, for respondent.

*Sarah O. Rollman* for intervenor.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and FISHER and EASTERLY,[*] *Associate Judges*.

BLACKBURNE-RIGSBY, *Chief Judge*:  On a rainy morning, petitioner Deanne Niles was walking across the College Park Metro station platform on her way to work when she slipped and fell.  Alleging injuries to her ankle, shoulder, and knee, Ms. Niles, an administrative assistant for intervenor Washington Metropolitan Area Transit Authority ("WMATA"), filed a claim for benefits under the District of Columbia Workers' Compensation Act (the "Act").[1]  An Administrative Law Judge ("ALJ") denied the claim after concluding that her injuries were noncompensable, citing the well-established proposition that injuries sustained while commuting to and from work fall outside the Act's coverage.  *See Grayson v. District of Columbia Dep't of Emp't Servs.,* 516 A.2d 909, 911 (D.C. 1986).  The Compensation Review Board ("CRB") of the District of Columbia Department of Employment Services affirmed.  Now on petition for review, Ms. Niles argues that, because WMATA encourages its employees to ride the Metro transit system and imposes work-related rules and obligations on its employees when they do (whether they are on or off duty), her injuries are compensable under the Act.  We affirm.

---

[*]  Associate Judge Easterly concurs in the judgment.

[1]  D.C. Code §§ 32-1501 to -1545 (2019 Repl.).

# I.

At the time of her injury, Ms. Niles lived in Lanham, Maryland and worked in WMATA's headquarters in downtown D.C. On her typical commute to work, Ms. Niles would drive from her home to the College Park Metro station where she would park her car for the day. She would then ride the Metrorail to the Gallery Place-Chinatown Metro stop and, from there, walk to the nearby WMATA office. WMATA allows its employees to ride the Metrorail and Metrobus for free, but employees are personally responsible for paying for parking at Metro stations. On May 5, 2017, rain caused the College Park Metro platform to become slick. After parking her car in the adjacent lot that morning, Ms. Niles walked across the platform, where she slipped and fell, sustaining injuries to her ankle, shoulder, and knee.

Ms. Niles filed a claim for benefits under the Act, seeking temporary total disability benefits and reimbursement for medical treatment relating to her injuries. At the evidentiary hearing before the ALJ, Ms. Niles gave uncontested testimony that WMATA encourages its employees to use the Metro system and allows them to ride free of charge. Ms. Niles also testified that she had no work-related duties at the College Park Metro station on the day of her injury. She also acknowledged that,

despite the fare subsidy and WMATA's encouragement that its employees use the Metro, Metro use by employees was voluntary. The ALJ denied Ms. Niles's claim, ruling that it was barred by the "going and coming" rule, which provides that "injuries sustained off the work premises, while enroute to or from work, do not fall within the category of injuries 'in the course of employment.'" *McKinley v. District of Columbia Dep't of Emp't Servs.*, 696 A.2d 1377, 1383 (D.C. 1997) (quoting *Grayson,* 516 A.2d at 911).

The CRB reviewed and affirmed the ALJ's order. The CRB concluded that, because WMATA did not require Ms. Niles to use the Metrorail, Ms. Niles's commute on the morning of her injury was personal and unrelated to her employment. It also concluded that the ALJ correctly applied the "going and coming" rule in denying Ms. Niles's claim. This petition for review followed.

## II.

We will affirm the CRB's decision unless it is "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." D.C. Code § 2-510(a)(3)(A) (2012 Repl.); *Mexicano v. District of Columbia Dep't of Emp't Servs.*, 806 A.2d 198, 203 (D.C. 2002). "We must determine (1) whether the agency made

a finding of fact on each material contested issue of fact; (2) whether substantial evidence in the record supports each finding; and (3) whether the conclusions of law follow rationally from the findings." *George Washington Univ. v. District of Columbia Bd. of Zoning Adjustment*, 831 A.2d 921, 931 (D.C. 2003). "[A]lthough we accord weight to the agency's construction of the statutes [that] it administers, the ultimate responsibility for deciding questions of law is assigned to this court." *Id.*

For an injury to fall within the coverage of the Act, it must "arise out of and in the course of employment." D.C. Code § 32-1501(12). The "out of employment" and "in the course of the employment" requirements are distinct, but "frequently, proof of one will incidentally tend to establish the other." *Kolson v. District of Columbia Dep't of Emp't Servs.*, 699 A.2d 357, 360 (D.C. 1997) (citation omitted). Because Ms. Niles's claim fails to satisfy either requirement, we hold that the injury falls outside the Act.

**A.**

Our first inquiry is whether the risk causing Ms. Niles's injury "arose out of" her employment with WMATA. The "arising out of" requirement refers to "the

origin or cause of the injury." *Bentt v. District of Columbia Dep't of Emp't Servs.*, 979 A.2d 1226, 1232 (D.C. 2009) (quoting *Kolson*, 699 A.2d at 361). We recognize three categories of risks causing injury to a claimant: (1) "risks distinctly associated with the employment," (2) "risks personal to the claimant," and (3) "'neutral' risks—i.e., risks having no particular employment or personal character." *Id.* (quoting *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 971 A.2d 909, 920 n.10 (D.C. 2009)). "Harms from the first are universally compensable. Those from the second are universally noncompensable." *Id.* Harms from the third, neutral risks, "arise out of employment" if the so-called positional-risk test is satisfied. *Clark v. District of Columbia Dep't of Emp't Servs.*, 743 A.2d 722, 727 (D.C. 2000). Under the positional-risk test, "an injury arises out of employment so long as it would not have happened *but for* the fact that conditions and obligations of the employment placed claimant in a position where he was injured." *Id.*

As an initial matter, Ms. Niles does not argue that the risks causing her accident were "distinctly associated" with her WMATA employment, nor is there evidence for the proposition. Accordingly, we ask whether the risks that caused Ms. Niles's injuries were either personal or neutral. Personal risks are those "thoroughly disconnected from the workplace." *Muhammad v. District of Columbia Dep't of Emp't Servs.*, 34 A.3d 488, 496 (D.C. 2012). In contrast, neutral risks are those

"having no particular employment or personal character." *Bentt*, 979 A.2d at 1232; *see* 1 Lex K. Larson & Thomas A. Larson, *Larson's Workers' Compensation Law* § 3.05 (Rev. Ed. 2019) ("This theory supports compensation, for example, in . . . situations in which the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he or she was injured by some neutral force . . . .") (footnote omitted). The CRB concluded that the risks giving rise to Ms. Niles's injury were entirely personal, thus rendering her injuries noncompensable under the Act. On petition for review, Ms. Niles argues that the CRB erred, and that the risks causing her injuries should have been treated as neutral, and thus subject to the positional-risk test. *See Bentt*, 979 A.2d at 1232.

We conclude that the risks giving rise to Ms. Niles's injuries were disconnected from her employment, thus the risks were personal and noncompensable. Central to our conclusion is the fact that Ms. Niles was not injured at her workplace. As an administrative assistant, Ms. Niles worked exclusively in WMATA's headquarters in downtown D.C. Ms. Niles's duties did not extend to the College Park Metro station, nor was she there on the day of her injury as a WMATA employee. Instead, Ms. Niles was there to ride the Metrorail as a member of the general public. Our conclusion here is distinguishable from our recent decision in

*Gaines v. District of Columbia Dep't of Emp't Servs.*, 210 A.3d 767 (D.C. 2019). There, we reviewed a WMATA station manager's claim for compensation for injuries from a slip and fall at a Metrorail station. *Id.* at 770. We concluded that, because the employee was injured in the station where she was scheduled to work, her injuries were not "thoroughly disconnected from the workplace." *Id.* at 772–73. The station manager's risk of injury, therefore, was not personal, but at least neutral. *Id.* Here, unlike the employee in *Gaines*, Ms. Niles was not scheduled to work at the College Park Metro station. When she was injured, Ms. Niles was commuting, not as a WMATA employee, but in her personal capacity; thus the risks causing her injury were "thoroughly disconnected from the workplace." *Id.*

Even if we were to treat the risk that caused Ms. Niles's injury as neutral and apply the positional-risk test, Ms. Niles's claim fails. Under this test, an injury arises out of employment "so long as it would not have happened but for the fact that conditions and obligations of the employment placed claimant in the position where she was injured." *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 830 A.2d 865, 872 (D.C. 2003). Here, we see no evidence that the conditions and obligations of Ms. Niles's employment as a WMATA administrative assistant placed her at the College Park Metro station. Ms. Niles's work took place exclusively at WMATA's headquarters. And on the morning of the injury, Ms. Niles had no work

obligations at the College Park Metro station. To be sure, the positional-risk test does not require Ms. Niles to show that her WMATA employment placed her on the College Park Metro platform at the precise time and place of the accident. *See Gaines*, 210 A.3d at 773 ("[S]o narrow an approach would lead to absurd consequences, because many workplace injuries occur in circumstances in which the employer did not dictate the precise location of the employee at the precise time of the injury."). But it does require Ms. Niles to at least establish that her employment placed her in the College Park Metro station on the day of the injury. *See Bentt*, 979 A.2d at 1232.

Ms. Niles argues that the positional-risk test is satisfied because she would not have been injured but for WMATA's encouragement to its employees to ride the Metro. At the administrative hearing, WMATA did not dispute that it encourages its employees to use the Metro, or that it provides its employees complimentary Metro fare benefits. But mere encouragement is not enough to satisfy the positional-risk test. *See Bentt*, 979 A.2d at 1232. Ms. Niles was not obligated to ride the Metrorail or make use of WMATA's fare benefits. Nor was there evidence that Ms. Niles's employment was conditioned on her use of the Metro system. Instead, Ms. Niles was free to choose how she commuted to work. Accordingly, we conclude that Ms. Niles's injuries did not arise out of her WMATA employment.

**B.**

Ms. Niles's claim is also noncompensable under the Act because the injury did not occur "in the course of" her employment. The CRB concluded that the "going and coming" rule barred Ms. Niles's claim for compensation. *See Grayson*, 516 A.2d at 911. On petition for review, Ms. Niles argues that her injury occurred in the course of her employment because she was subject to WMATA rules and duties when she rode the Metrorail, and WMATA benefitted from her presence there.

The "course of employment" requirement focuses on "the time, place and circumstances under which the injury occurred." *Bentt*, 979 A.2d at 1234 (quoting *Kolson*, 699 A.2d at 361). An injury occurs in the course of employment when "it takes place within the period of employment, at a place where the employee may reasonably be expected to be, and while [the employee] is reasonably fulfilling duties of [the employee's] employment or doing something reasonably incidental thereto." *Id.* at 1235. Under the "going and coming" rule, injuries occurring off of

work premises while traveling to and from work generally do not occur in the course of employment. *Grayson*, 516 A.2d at 911.[2]

We agree with the CRB that the "going and coming" rule bars Ms. Niles's claim for compensation. We first note that, because WMATA was in control of the platform at the College Park Metro station, it is true "in a technical and artificial sense" that Ms. Niles was on her employer's premises when she was injured. 2 Larson & Robinson, *supra*, § 15.02. But "[i]n a more realistic sense," because Ms. Niles was not at the Metro station for any work-related reason, she was riding the Metrorail as a member "of the public, whether they have free passes or not." *Id.*; *see also Lemon v. N.Y.C. Transit Auth.*, 528 N.E.2d 1205, 1209 (N.Y. 1988) ("[I]n exercising the right to use the subways, claimant made her own free choice whether to use the pass for commuting 'and served [her] own convenience. The company was indifferent as to the way or means by which [s]he reached the place where the day's work began.'") (citation omitted and alteration in original). Thus, for purposes of the "going and coming" rule, Ms. Niles's injury at the College Park Metro station occurred off of WMATA's premises. Because Ms. Niles's injury occurred on her regular commute to work, during which she was not performing any work duties,

---

[2] Although inapplicable here, we have recognized certain exceptions to the "going and coming" rule. *See, e.g., Kolson*, 699 A.2d at 360 (traveling employees); *Grayson*, 516 A.2d at 911 n.3 (paid lunches).

her injury falls squarely within the "going and coming" rule and thus outside the course of her employment. *See Grayson*, 516 A.2d at 911.

Ms. Niles argues that, because she was subject to WMATA rules and duties while she rode the Metrorail, her injury at the College Park Metro station arose in the course of her employment. Ms. Niles presented evidence at the administrative hearing showing that when WMATA employees ride the Metro, they are subject to various obligations, regardless of whether or not they are working. For instance, all employees are required to maintain a neat appearance, to report accidents and file written reports, and to report the presence of unauthorized persons on WMATA property. Ms. Niles argues that while riding the Metrorail, she was "an extra employee who could assist other riders in the event of emergencies." But the fact that Ms. Niles, while riding the Metro, might have been called to action is not enough to bring her regular commute within the course of employment.

In *Foster v. Massey*, our predecessor court held that an employee who is "on call" is not, without more, exempt from the "going and coming" rule. 407 F.2d 343, 346 (D.C. Cir. 1968).[3] In *Foster*, the widow of a bus driver filed a workers'

---

[3] *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("[D]ecisions of the United States Court of Appeals rendered prior to February 1, 1971 . . . constitute the case law of the District of Columbia.").

compensation claim relating to the driver's car accident and death while commuting to work. *Id.* at 344. The decedent was an on-call employee who did not work a regular schedule, but was guaranteed a minimum weekly wage. *Id*. at 344–45. When he was called to duty, his pay started at the time he was scheduled to report to the station; he was not paid during his commute. *Id*. at 345. The decedent's widow argued that, because the decedent's guaranteed wage was effectively compensation for being on call, the accident arose in the course of employment. *Id.* The court recognized that, when an employee is paid for their commute to work, "this thin link is deemed sufficient to bring the trip within the boundary of employment and thus of accident compensability." *Id.* at 346. But in affirming the denial of the widow's claim, the court noted that, to show such a link, "the identification of pay with trip must be specific and certain. It is not enough that before the trip begins workers are on call . . . or to argue that overall compensation takes account . . . of the inconvenience of being on call." *Id.*; *see also Canney v. Strathglass Holdings, LLC*, 159 A.3d 330, 334 n.2 (Me. 2017) ("[I]njuries that occurred while an employee was 'on call' [are] not necessarily within the course of employment for worker's compensation purposes."); *State Accident Ins. Fund Corp. v. Reel*, 735 P.2d 364, 368 (Or. 1987) ("As to such [employees] who are continually on call, but off the premises, off-premises injuries normally are not covered."); *Jake's Casing Crews, Inc. v. Grant*, 451 P.2d 700, 703 (Okla. 1969) ("The fact that the claimant was

subject to call at all hours of the day or night, does not establish that he was in the line of duty at the time the accident occurred."); 2 Larson & Robinson, *supra*, § 14.05[6] ("The circumstance that the employee is 'subject to call' should not be given any independent importance in the narrow field of going to and from work.").

So too here. It is not enough that Ms. Niles was required to comport with WMATA rules while riding the Metrorail, or that she might have been called to action under certain circumstances. There was no "specific and certain" evidence that Ms. Niles was paid specifically to ride the Metrorail. *Foster*, 407 F.2d at 346. Although WMATA allowed Ms. Niles to use the Metro system for free, that free access "was a fringe benefit . . . that could be used by [WMATA] employees as they wished," *Lemon*, 528 N.E.2d at 1209, rather than a "specific and certain" link between Ms. Niles's employee wage and her use of the Metro. Without more, the rules and obligations imposed on Ms. Niles while she rode the Metrorail are not enough to bring those trips within the boundary of her employment.

Lastly, Ms. Niles argues that her injury occurred in the course of employment because her use of the Metro conferred two distinct benefits on WMATA: one, the public's increased confidence in the Metro in seeing WMATA's own employees use public transit; and two, the presence of an extra employee who could potentially

assist with Metro operations. The "course of employment" requirement may be satisfied if an injury occurs in the performance of "an activity of mutual benefit to employer and employee." *Kolson*, 699 A.2d at 360 (citation omitted). But in all instances, the activity at issue must be "reasonable," "foreseeable," and "reasonably related or incidental" to the claimant's employment. *Id.* at 361. Here, we fail to see how Ms. Niles's presence at the Metro station sent the public any message, given the fact that she was not wearing a WMATA uniform or otherwise communicating her identity as a WMATA employee. When Ms. Niles rode the Metrorail, WMATA may have indeed benefitted from the presence of an extra employee who could potentially assist during emergencies. But when Ms. Niles was injured at the College Park Metro station, she was not performing any activity "reasonably related or incidental" to her work.

## III.

We conclude that the CRB's determination that Ms. Niles is barred from compensation followed rationally from its factual findings. Ms. Niles's injury did not arise out of or in the course of her employment: The risk that caused Ms. Niles's injury was distinctly personal, and the injury, sustained off premises during her

regular work commute, is squarely barred from compensation under the "going and coming" rule.  Accordingly, we affirm the order of the CRB.

*So ordered.*